# 25-806

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

JULIANA ESCOBAR RESTREPO,

*Plaintiff-Appellant,*

V.

SEBASTIAN CORREA MORALES,

*Defendant-Appellee.*

---

On Appeal from the United States District Court for the Eastern District of New York
Case No. 1:24-cv-07951

Appendix of Appellant Juliana Escobar
Juliana Escobar Restrepo, Pro Se
1207 154th Street
Whitestone, NY 11357
(718) 219-3356
Email: escobar.juliana@live.com

# TABLE OF CONTENTS

1. District Court Docket Sheet ..............................................................3
2. Order being appealed ...................................................................14
3. Judgment ....................................................................................47
4. Notice of Appeal .........................................................................48

10/20/2025
Eastern District of New York - LIVE Database 1.8 (Revision 1.8.4)

Query    Reports    Utilities    Help    Log Out

APPEAL,ACO,DECLINED-CONSENT,MJI

# U.S. District Court
# Eastern District of New York (Brooklyn)
# CIVIL DOCKET FOR CASE #: 1:24-cv-07951-NCM-TAM

| | |
|---|---|
| Correa Morales v. Escobar Restrepo | Date Filed: 11/15/2024 |
| Assigned to: Judge Natasha C. Merle | Date Terminated: 03/31/2025 |
| Referred to: Magistrate Judge Taryn A. Merkl | Jury Demand: None |
| Cause: 42:11601 - INTERNATIONAL CHILD ABDUCTION REMEDIES | Nature of Suit: 890 Other Statutory Actions |
| | Jurisdiction: Federal Question |

**Petitioner**

**Sebastian Correa Morales**                    represented by    **Michael Banuchis**
420 Lexington Avenue
Ste 2834
New York, NY 10170
212-681-6400
Email: mbanuchis@bgmlaw-nyc.com
*ATTORNEY TO BE NOTICED*

**Richard Min**
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue
Suite 2821
New York, NY 10170
212-257-1944
Fax: 212-681-6999
Email: rmin@gkmrlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**Juliana Escobar Restrepo**                    represented by    **Edgar Loy Fankbonner**
Goldberges & Dubin PC
401 Broadway,
Suite 306
New York, NY 10013
212-431-9380
Fax: 212-966-0588
Email: gnd401@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Juliana Escobar Restrepo**                    represented by    **Edgar Loy Fankbonner**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Sebastian Correa Morales**                    represented by    **Michael Banuchis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard Min**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/15/2024 | 1 | COMPLAINT *for Return of Child to Colombia* against Sebastian Correa Morales filing fee $ 405, receipt number ANYEDC-18498450 Was the Disclosure Statement on Civil Cover Sheet completed -YES,, filed by Sebastian Correa Morales. (Attachments: # 1 Exhibit Ex A - Hague Convention, # 2 Exhibit Ex B - ICARA, # 3 Exhibit Ex C - Travel Authorization, # 4 Exhibit Ex D - Flight, # 5 Exhibit Ex E - Order of Dismissal, # 6 Proposed Summons Proposed Summons, # 7 Civil Cover Sheet Civil Cover Sheet) (Min, Richard) (Entered: 11/15/2024) |
| 11/15/2024 | | Case Assigned to Magistrate Judge Taryn A. Merkl. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (KD) (Entered: 11/15/2024) |
| 11/15/2024 | 2 | Clerks Notice Re: Consent. A magistrate judge has been assigned as the presiding judge in this case as part of a Pilot Program, governed by EDNY Administrative Order 2023-23. In accordance with Rule 73 of the Federal Rules of Civil Procedure, Local Rule 73.1, the parties are notified that if all parties consent, the assigned Magistrate Judge is available to conduct all proceedings in this action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to this Notice is a blank copy of the consent form that should be filled out, signed and filed electronically only if all parties wish to consent. The form is also available here: https://www.nyed.uscourts.gov/edny-direct-assignment-pilot-program. Any party may withhold its consent without adverse substantive consequences. Do NOT return or file the consent unless all parties have signed the consent. Unless all parties consent to the Magistrate Judge jurisdiction by the deadline set forth in the Administrative Order 2023-23, a District Judge will be assigned to the case. The parties are directed to review the terms of Administrative Order 2023-23 and other materials related to the Pilot Program on the Courts website: https://www.nyed.uscourts.gov/edny-direct-assignment-pilot-program. (KD) (Entered: 11/15/2024) |
| 11/15/2024 | 3 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made, if any. (KD) (Entered: 11/15/2024) |
| 11/15/2024 | 4 | Summons Issued as to Juliana Escobar Restrepo. (KD) (Entered: 11/15/2024) |
| 11/18/2024 | | ORDER: The Court is in receipt of Plaintiff's complaint 1 . Plaintiff is respectfully directed to serve Defendant **as soon as practicable**, and to file a status report with the Court by **12/9/2024**. In the event the parties are prepared to be referred to mediation or a settlement conference before the Court prior to the 12/9/2024 status report, they may submit a letter |

| | | |
|---|---|---|
| | | motion via ECF at any time. Ordered by Magistrate Judge Taryn A. Merkl on 11/18/2024. (KKS) (Entered: 11/18/2024) |
| 11/19/2024 | 5 | MOTION to Expedite *Proceedings*, MOTION for Temporary Restraining Order *to Prevent Further Removal of Child from Jurisdiction* by Sebastian Correa Morales. (Attachments: # 1 Proposed Order Proposed Order) (Min, Richard) (Entered: 11/19/2024) |
| 11/20/2024 | | NOTICE to Assign District Judge: The Clerk of Court is directed to reassign this case to a district judge. (KC) (Entered: 11/20/2024) |
| 11/20/2024 | | Case Reassigned to Judge Natasha C. Merle and Magistrate Judge Taryn A. Merkl. Magistrate Judge Taryn A. Merkl no longer assigned as presider to the case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (DA) (Entered: 11/20/2024) |
| 11/20/2024 | 6 | ORDER TO SHOW CAUSE & TEMPORARY RESTRAINING -- Respondent is directed to show cause before this Court on November 26, 2024, at 12:00 PM, as to why an order should not be entered granting the petitioner the relief requested in his 5 motion. Pending the determination of petitioner's application and entry of an order thereon, respondent, or any person acting in concert with respondent, is prohibited from removing the Child from the state of New York. Respondent shall deposit with the Clerk of the Court any and all passports or other travel documents in the Child's name as soon as possible, but no later than November 26, 2024, at 12:00 PM. Petitioner is directed to serve respondent with the petition and accompanying papers by November 22, 2024; and file proof of personal service upon respondent with the Court by November 25, 2024. **ORDER ATTACHED**. Ordered by Judge Natasha C. Merle on 11/20/2024. (AG) (Entered: 11/20/2024) |
| 11/25/2024 | 7 | NOTICE of Appearance by Michael Banuchis on behalf of Sebastian Correa Morales (aty to be noticed) (Banuchis, Michael) (Entered: 11/25/2024) |
| 11/25/2024 | 8 | AFFIDAVIT of Service for Petition, Order, ECF Docket served on Juliana Escobar Restrepo on 11/22/24, filed by Sebastian Correa Morales. (Banuchis, Michael) (Entered: 11/25/2024) |
| 11/26/2024 | | CLERK'S ANNOTATION re 6 Order to Show Cause - Two passports for the minor child have been submitted to the Clerk's Office and will be placed in the vault for safe keeping. The passports will not be released without further direction from the Court. (TLH) (Entered: 11/26/2024) |
| 11/26/2024 | | Minute Entry for proceedings held before Judge Natasha C. Merle: Show Cause Hearing held on 11/26/2024. Appearances: Michael Banuchis and Camilla Redmond (not yet admitted) appeared on behalf of petitioner; and respondent Juliana Escobar Restrepo appeared *pro se*. The Court set the following briefing schedule: respondent's responsive pleading to the petition is due on or before December 10; and petitioner's reply, if any, is due on or before December 17. By December 2, 2024, petitioner shall file a status letter addressing whether respondent consents to an extension of the 6 Temporary Restraining Order until a hearing on the petition. If she does not, petitioner shall inform the Court what further relief he seeks regarding the TRO. In the same letter, petitioner shall inform the Court whether the parties would like to explore settlement. Petitioner is directed to serve a copy of this minute entry on the respondent. (Court Reporter Jamie Stanton.) (AG) (Entered: 11/26/2024) |
| 12/02/2024 | 9 | Letter *re: Status Update* by Sebastian Correa Morales (Banuchis, Michael) (Entered: 12/02/2024) |
| 12/05/2024 | | ORDER re 9 Letter *re: Status Update* filed by Sebastian Correa Morales -- Pursuant to petitioner's 9 letter, the parties are referred to Judge Merkl for purposes of conducting a |

10/20/2025

Case: 25-806, 10/20/2025, DktEntry: 39.1, Page 6 of 48
Eastern District of New York - LIVE Database 1.8 (Revision 1.8.4)

| | | |
|---|---|---|
| | | settlement conference. Given the nature of this proceeding, the parties shall jointly file a proposed discovery plan with agreed-upon scope and deadlines by December 19, 2024. The parties are reminded that any discovery should be limited, given the expedited timeline of this case. In their proposed discovery plan, the parties are instructed to propose three mutually agreeable options for a two-day hearing on the <u>1</u> petition. On consent, until the hearing on the <u>1</u> petition, respondent is enjoined from removing or assisting in the removal of the Child from the state of New York and will leave the Child's passports and other travel documents deposited with the Court. Petitioner is directed to serve a copy of this order on the respondent. Ordered by Judge Natasha C. Merle on 12/5/2024. (AG) (Entered: 12/05/2024) |
| 12/06/2024 | | SCHEDULING ORDER: A telephonic Pre-Settlement Status Conference will be held on **12/12/2024 at 12:00 p.m.** before Magistrate Judge Taryn A. Merkl. The Court notes that, because it is a pre-settlement status conference, the parties are not required to attend. Counsel are directed to call the number **(571) 353-2301**. The meeting ID is **362861721**. Counsel shall dial in five (5) minutes before the scheduled conference. Ordered by Magistrate Judge Taryn A. Merkl on 12/6/2024. (KC) (Entered: 12/06/2024) |
| 12/09/2024 | <u>10</u> | Letter *re: rescheduling conference* by Sebastian Correa Morales (Banuchis, Michael) (Entered: 12/09/2024) |
| 12/10/2024 | | ORDER: The Court is in receipt of Plaintiffs letter <u>10</u> requesting adjournment of the pre-settlement status conference currently set for 12/12/2024. The Court hereby grants that request. The telephonic Pre-Settlement Status Conference will now be held via video on **12/17/2024 at 12:15 p.m.** before Magistrate Judge Taryn A. Merkl. The Zoom video feed link has been emailed to Counsels for Petitioner. The Court respectfully directs counsel to provide Respondent with a copy of this Order and the video link information. Ordered by Magistrate Judge Taryn A. Merkl on 12/10/2024. (KC) (Entered: 12/10/2024) |
| 12/10/2024 | <u>11</u> | NOTICE of Appearance by Edgar Loy Fankbonner on behalf of Juliana Escobar Restrepo (aty to be noticed) (Fankbonner, Edgar) (Entered: 12/10/2024) |
| 12/10/2024 | <u>12</u> | Letter MOTION for Extension of Time to File Answer *to Petition* by Juliana Escobar Restrepo. (Fankbonner, Edgar) (Entered: 12/10/2024) |
| 12/11/2024 | | ORDER granting <u>12</u> Motion for Extension of Time to Answer by Juliana Escobar Restrepo -- The request is granted. Respondent's responsive pleading to petitioner's motion is due on or before December 24, 2024. Petitioner's reply, if any, is due on or before January 6, 2025. Ordered by Judge Natasha C. Merle on 12/11/2024. (AG) (Entered: 12/11/2024) |
| 12/17/2024 | | Minute Entry and Order: A telephonic Pre-Settlement Status Conference was held on 12/17/2024 before Magistrate Judge Taryn A. Merkl. Appearances by Richard Min for Plaintiff and Edgar Loy Fankbonner for Defendant. Discussion held regarding case status and discovery. An initial Settlement Conference will be held via video on **1/3/2025 at 11:00am** before Magistrate Judge Taryn A. Merkl. The parties are directed that each individual client and/or a principal with full settlement authority for a corporation or other business entity must personally appear with counsel at the initial settlement conference. In advance of the conference, the parties are directed to submit their respective short *ex parte* settlement positions via Chambers email, merkl_chambers@nyed.uscourts.gov, no later than **1/2/2025 at 2:00pm**. As discussed, the statements should include an overview of the client's settlement position, a history of any settlement discussions to date, and any factual information that is pertinent to assessing the strengths and weaknesses of each party's position at trial. The Court may schedule *ex parte* telephone calls with counsel after review of the statements. The parties are also directed to make any arrangements for interpreters, if needed, to facilitate the settlement conference. The parties are instructed to contact Magistrate Judge Merkl's deputy to retrieve the video feed link. The public can dial the toll-free number 1-646-828-7666 and enter Meeting ID 160 3477 8681# and Passcode |

| | | 525035#. Ordered by Magistrate Judge Taryn A. Merkl on 12/17/2024. (Cisco Log #12:22-12:37.) (KKS) (Entered: 12/17/2024) |
|---|---|---|
| 12/19/2024 | 13 | STIPULATION *for Jointly Proposed Schedule* by Sebastian Correa Morales (Min, Richard) (Entered: 12/19/2024) |
| 12/23/2024 | | SCHEDULING ORDER re 13 Stipulation filed by Sebastian Correa Morales -- The parties' 13 stipulation is so-ordered with the following modifications: A two-day hearing on the 1 petition will take place on January 22 and 23, 2025, at 10:00 a.m. in Courtroom 2F North. In addition to the deadlines listed in the stipulation, parties are to submit any motions *in limine* by January 2, 2025; responses are due by January 9, 2025. Additionally, the parties are to file trial briefs not to exceed five (5) pages, addressing the legal issues before the court and outlining their anticipated witness testimony and evidence, by January 15, 2025. Parties are to file a letter certifying the completion of all discovery by January 8, 2025. Ordered by Judge Natasha C. Merle on 12/23/2024. (AG) (Entered: 12/23/2024) |
| 12/24/2024 | 14 | *Respondent's* ANSWER to 1 Complaint,, *Petition for Return of Child to Colombia*, COUNTERCLAIM *for Attorney Fees* against Sebastian Correa Morales by Juliana Escobar Restrepo. (Attachments: # 1 Exhibit Text Messages) (Fankbonner, Edgar) (Entered: 12/24/2024) |
| 01/02/2025 | 15 | Letter *re: extension on consent* by Sebastian Correa Morales (Banuchis, Michael) Modified on 1/2/2025 (AG). Added MOTION to Adjourn Conference on 1/2/2025 (AG). (Entered: 01/02/2025) |
| 01/02/2025 | | ORDER granting 15 Motion for Extension of Time to File; granting 15 Motion to Adjourn by Sebastian Correa Morales -- The parties' joint request is granted. The schedule is amended accordingly: A two-day hearing on the 1 petition will take place on February 5 and 6, 2025, at 10:00 a.m. in Courtroom 2F North. The parties shall file any motions *in limine* by January 8, 2025; responses are due by January 10, 2025. Absent specific requests from the parties, all other deadlines remain in place. Pursuant to Rule I.F.1 of this Court's Individual Practice Rules, requests for extensions of time must be made at least two business days prior to the scheduled deadline. Failure to comply with this rule without showing good cause may result in denial of such requests in the future. Ordered by Judge Natasha C. Merle on 1/2/2025. (AG) (Entered: 01/02/2025) |
| 01/02/2025 | | ORDER: The Court is in receipt of each party's *ex parte* settlement statement. After careful review of the statements and in light of the discussion held at the Pre-Settlement Conference on 12/17/2024, the Court has determined that a settlement conference would not be productive at this time. In light of these concerns, the settlement conference scheduled for 1/3/2025 at 11:00a.m. is adjourned *sine die*. All other deadlines remain in effect. Ordered by Magistrate Judge Taryn A. Merkl on 1/2/2025. (KKS) (Entered: 01/02/2025) |
| 01/06/2025 | 16 | *Reply* ANSWER to 14 Answer to Complaint,, Counterclaim, by Sebastian Correa Morales. (Min, Richard) (Entered: 01/06/2025) |
| 01/07/2025 | 17 | Letter *re: Trial Dates* by Sebastian Correa Morales (Banuchis, Michael) Modified on 1/8/2025 (AG). (Entered: 01/07/2025) |
| 01/08/2025 | 18 | Letter *Re. Completion of Discovery and Deadlines for Motions in Limine, Exchange of Exhibits* by Sebastian Correa Morales, Juliana Escobar Restrepo (Fankbonner, Edgar) (Entered: 01/08/2025) |
| 01/08/2025 | 19 | MOTION in Limine by Sebastian Correa Morales. (Attachments: # 1 Memorandum in Support) (Banuchis, Michael) (Entered: 01/08/2025) |
| 01/08/2025 | 20 | MOTION in Limine by Juliana Escobar Restrepo. (Fankbonner, Edgar) (Entered: |

| | | 01/08/2025) |
|---|---|---|
| 01/10/2025 | 21 | Letter *on consent* by Sebastian Correa Morales (Attachments: # 1 Exhibit, # 2 Exhibit) (Banuchis, Michael) (Entered: 01/10/2025) |
| 01/10/2025 | 22 | SCHEDULING ORDER re 21 Letter filed by Sebastian Correa Morales -- The Court GRANTS the parties' stipulated amended schedule, ECF No. 21-1, as modified. The parties are again reminded that pursuant to Rule I.F.1 of this Court's Individual Practice Rules, requests for extensions of time must be made at least two business days prior to the scheduled deadline. Failure to comply with this rule without showing good cause may result in denial of such requests in the future. **ORDER ATTACHED.** Ordered by Judge Natasha C. Merle on 1/10/2025. (ERB) (Entered: 01/10/2025) |
| 01/13/2025 | 23 | RESPONSE to Motion re 20 MOTION in Limine filed by Sebastian Correa Morales. (Banuchis, Michael) (Entered: 01/13/2025) |
| 01/13/2025 | 24 | MEMORANDUM in Opposition *to Petitioner's Motion in Limine* filed by Juliana Escobar Restrepo. (Attachments: # 1 Exhibit New Jersey Divorce Complaint) (Fankbonner, Edgar) (Entered: 01/13/2025) |
| 01/15/2025 | | ORDER granting 17 Motion to Adjourn by Sebastian Correa Morales -- The request is granted on consent. The two-day hearing on the 1 petition previously scheduled for February 5 and 6, is rescheduled to February 24 and 26, 2025, at 10:00 a.m. in Courtroom 2F North. Ordered by Judge Natasha C. Merle on 1/15/2025. (AG) (Entered: 01/15/2025) |
| 01/16/2025 | 25 | STIPULATION *re: access* by Sebastian Correa Morales (Banuchis, Michael) (Entered: 01/16/2025) |
| 01/17/2025 | 26 | INTERIM CONSENT ORDER re 25 Stipulation filed by Sebastian Correa Morales -- So Ordered. Ordered by Judge Natasha C. Merle on 1/17/2025. (AG) (Entered: 01/17/2025) |
| 01/22/2025 | | SCHEDULING ORDER -- A final pretrial conference will be held on February 12, 2025, at 12:30 p.m. in person in Courtroom 2F North. Ordered by Judge Natasha C. Merle on 1/22/2025. (AG) (Entered: 01/22/2025) |
| 01/23/2025 | 27 | Exhibit List by Juliana Escobar Restrepo. (Fankbonner, Edgar) (Entered: 01/23/2025) |
| 01/23/2025 | 28 | Witness List by Juliana Escobar Restrepo (Fankbonner, Edgar) (Entered: 01/23/2025) |
| 01/23/2025 | 29 | Exhibit List by Sebastian Correa Morales. (Min, Richard) (Entered: 01/23/2025) |
| 01/23/2025 | 30 | Witness List by Sebastian Correa Morales (Min, Richard) (Entered: 01/23/2025) |
| 01/27/2025 | 31 | STIPULATION *re: remote testimony* by Sebastian Correa Morales (Banuchis, Michael) (Entered: 01/27/2025) |
| 01/29/2025 | 32 | STIPULATION AND ORDER FOR REMOTE TESTIMONY re 31 Stipulation filed by Sebastian Correa Morales -- So Ordered. Ordered by Judge Natasha C. Merle on 1/29/2025. (AG) (Entered: 01/29/2025) |
| 01/31/2025 | 33 | Exhibit List *Amended Exhibit List* by Sebastian Correa Morales. (Banuchis, Michael) (Entered: 01/31/2025) |
| 01/31/2025 | 34 | TRIAL BRIEF by Sebastian Correa Morales (Banuchis, Michael) (Entered: 01/31/2025) |
| 01/31/2025 | 35 | Proposed Findings of Fact by Sebastian Correa Morales (Banuchis, Michael) (Entered: 01/31/2025) |
| 01/31/2025 | 36 | Exhibit List *Amended* by Juliana Escobar Restrepo. (Fankbonner, Edgar) (Entered: 01/31/2025) |

10/20/2025

Eastern District of New York - LIVE Database 1.8 (Revision 1.8.4)

| 01/31/2025 | 37 | TRIAL BRIEF by Juliana Escobar Restrepo (Fankbonner, Edgar) (Entered: 01/31/2025) |
|---|---|---|
| 01/31/2025 | 38 | Proposed Findings of Fact by Juliana Escobar Restrepo (Fankbonner, Edgar) (Entered: 01/31/2025) |
| 02/03/2025 | 39 | Letter *re: Courtesy Copies* by Sebastian Correa Morales (Banuchis, Michael) (Entered: 02/03/2025) |
| 02/05/2025 | | SCHEDULING ORDER -- Due to an unanticipated change in the Court's schedule, the pretrial conference previously scheduled for February 12, 2025, at 12:30 p.m. is rescheduled to begin at 3:00 p.m. on the same date. Ordered by Judge Natasha C. Merle on 2/5/2025. (AG) (Entered: 02/05/2025) |
| 02/11/2025 | | **NOTICE OF CHANGE OF COURTROOM**: The final pretrial conference set for February 12, 2025, at 3:00 p.m. before District Judge Natasha C. Merle will be held in Courtroom 4F North. (AG) (Entered: 02/11/2025) |
| 02/12/2025 | | Minute Entry for proceedings held before Judge Natasha C. Merle: Pretrial Conference held on 2/12/2025. Appearances: Michael Banuchis and Camilla Redmond appeared on behalf of petitioner; and Edgar Fankbonner appeared on behalf of respondent. Case called. Discussion held. The Court ruled on the parties' motions *in limine* 19 20 orally on the record. By February 19, 2025, the parties shall: (1) submit revised witness lists as discussed; (2) file a joint exhibit list incorporating todays rulings, any stipulations, and any remaining objections; and (3) advise the Court on the status of their settlement discussions. <br><br>The parties are to advise the Court of their availability for February 25 by February 14, 2025. (Court Reporter Sophie Nolan.) (AG) (Entered: 02/12/2025) |
| 02/14/2025 | 40 | Letter *re: availability* by Sebastian Correa Morales (Banuchis, Michael) (Entered: 02/14/2025) |
| 02/19/2025 | 41 | Letter *joint status update re: settlement* by Sebastian Correa Morales (Banuchis, Michael) (Entered: 02/19/2025) |
| 02/19/2025 | 42 | Exhibit List *joint exhibit list* by Sebastian Correa Morales. (Banuchis, Michael) (Entered: 02/19/2025) |
| 02/19/2025 | 43 | Witness List by Sebastian Correa Morales (Banuchis, Michael) (Entered: 02/19/2025) |
| 02/19/2025 | 44 | Witness List by Juliana Escobar Restrepo (Fankbonner, Edgar) (Entered: 02/19/2025) |
| 02/20/2025 | 45 | STIPULATION *re. Visitation by Petitioner, 2-21-2025* by Juliana Escobar Restrepo (Fankbonner, Edgar) (Entered: 02/20/2025) |
| 02/20/2025 | 46 | INTERIM CONSENT ORDER re 45 Stipulation filed by Juliana Escobar Restrepo -- So Ordered. Ordered by Judge Natasha C. Merle on 2/20/2025. (AG) (Entered: 02/20/2025) |
| 02/20/2025 | 47 | **HEARING ORDER** re 1 Petition -- The two-day hearing on the Petition will proceed as scheduled on Monday, February 24 and Wednesday, February 26, 2025. Proceedings will commence at 9:30 a.m. and adjourn at 4:30 p.m. each day. The parties shall confer and inform the Court in writing by 5:00 p.m. on Sunday, February 23 whether any direct examination will be submitted through witness affidavit(s). The parties shall file post-hearing Proposed Findings of Fact and Conclusions of Law by Wednesday, March 5, 2025. **SEE ATTACHED ORDER**. Ordered by Judge Natasha C. Merle on 2/20/2025. (AG) (Entered: 02/20/2025) |
| 02/20/2025 | 48 | Exhibit List *Amended Joint Exhibit List* by Sebastian Correa Morales, Juliana Escobar Restrepo. (Fankbonner, Edgar) (Entered: 02/20/2025) |
| 02/21/2025 | 49 | Letter *re: witness schedule* by Sebastian Correa Morales (Banuchis, Michael) (Entered: |

10/20/2025

Eastern District of New York - LIVE Database 1.8 (Revision 1.8.4)

| | | |
|---|---|---|
| | | 02/21/2025) |
| 02/21/2025 | 50 | Letter *re: Courtesy Copies* by Sebastian Correa Morales (Banuchis, Michael) (Entered: 02/21/2025) |
| 02/24/2025 | | Minute Entry for proceedings held before Judge Natasha C. Merle: Bench Trial held on 2/24/2025. Appearances: Richard Min and Camilla Redmond appeared on behalf of petitioner Sebastian Correa Morales (also present); and Edgar Fankbonner appeared on behalf of respondent Juliana Escobar Restrepo (also present). Spanish interpreters Nancy Adler and Mercedes Abalos were present and sworn. Case called. Witnesses sworn, testimony received, and evidence entered. Trial continued to Wednesday February 26, 2025, at 9:30 a.m. By 12:00 p.m. tomorrow February 25, 2025, the parties shall advise the Court if they intend to offer any direct examination through witness affidavit(s). Any affidavit of direct examination shall be submitted by 3:00 p.m. tomorrow February 25. (Court Reporter Linda Marino.) (AG) (Entered: 02/24/2025) |
| 02/25/2025 | 51 | Letter *re. Testimony by Affidavit* by Juliana Escobar Restrepo (Fankbonner, Edgar) (Entered: 02/25/2025) |
| 02/25/2025 | 52 | Letter *re: affidavits* by Sebastian Correa Morales (Banuchis, Michael) (Entered: 02/25/2025) |
| 02/26/2025 | | Minute Entry for proceedings held before Judge Natasha C. Merle: Bench Trial completed on 2/26/2025. Appearances: Richard Min, Michael Banuchis and Camilla Redmond appeared on behalf of petitioner Sebastian Correa Morales (also present); and Edgar Fankbonner appeared on behalf of respondent Juliana Escobar Restrepo (also present). Spanish interpreters Nancy Adler and Mercedes Abalos were present. Witnesses sworn, testimony received, and evidence entered. Both sides rested their cases and made closing statements. Post-trial Proposed Findings of Fact and Conclusions of Law shall be filed by March 5, 2025. (Court Reporter Charleane Heading.) (AG) (Entered: 02/26/2025) |
| 02/26/2025 | 53 | Exhibit and Witness List. (AG) (Entered: 02/27/2025) |
| 02/27/2025 | 54 | STIPULATION *proposed interim access consent order* by Sebastian Correa Morales (Banuchis, Michael) (Entered: 02/27/2025) |
| 02/27/2025 | 55 | INTERIM CONSENT ORDER re 54 Stipulation filed by Sebastian Correa Morales -- So Ordered. Ordered by Judge Natasha C. Merle on 2/27/2025. (AG) (Entered: 02/27/2025) |
| 03/05/2025 | 56 | Proposed Findings of Fact by Sebastian Correa Morales (Banuchis, Michael) (Entered: 03/05/2025) |
| 03/05/2025 | 57 | Proposed Findings of Fact by Sebastian Correa Morales, Juliana Escobar Restrepo (Fankbonner, Edgar) (Entered: 03/05/2025) |
| 03/06/2025 | 58 | Proposed Findings of Fact by Juliana Escobar Restrepo (Fankbonner, Edgar) (Entered: 03/06/2025) |
| 03/06/2025 | 59 | Letter *re: courtesy copies of post trial brief* by Sebastian Correa Morales (Banuchis, Michael) (Entered: 03/06/2025) |
| 03/25/2025 | 60 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on February 26, 2025, for hearing type Bench Trial, before Judge Merle. Court Reporter/Transcriber Charleane M. Heading, Telephone number 718-613-2643. Email address: cheading@aol.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". |

| | | |
|---|---|---|
| | | Redaction Request due 4/15/2025. Redacted Transcript Deadline set for 4/25/2025. Release of Transcript Restriction set for 6/23/2025. (Heading, Charleane) (Entered: 03/25/2025) |
| 03/25/2025 | 61 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on February 24, 2025, before Judge Natasha C. Merle. Court Reporter/Transcriber Linda A. Marino, Telephone number 718-613-2484. Email address: lindacsr@aol.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 4/15/2025. Redacted Transcript Deadline set for 4/25/2025. Release of Transcript Restriction set for 6/23/2025. (Marino, Linda) (Entered: 03/25/2025) |
| 03/28/2025 | 62 | **FINDINGS OF FACT AND CONCLUSIONS OF LAW**: The petition is GRANTED and the child is ordered returned to Colombia. Respondent's counterclaim for attorneys' fees and costs is DENIED. Each party shall bear its own costs. The Court respectfully directs the Clerk of Court enter judgment in favor of petitioner. The parties shall submit a joint proposed order of return by April 4, 2025. **ORDER ATTACHED**. Ordered by Judge Natasha C. Merle on 3/28/2025. (AG) (Entered: 03/28/2025) |
| 03/31/2025 | 63 | JUDGMENT: ORDERED and ADJUDGED that judgment is hereby entered in favor of Petitioner, and the child is ordered returned to Colombia; and that Respondent's motion for attorneys' fees is denied. Signed by Alicia Guy, Deputy Clerk, on behalf of Brenna B. Mahoney, Clerk of Court on on 3/31/2025. (AG) (Entered: 03/31/2025) |
| 04/04/2025 | 64 | Letter MOTION to Stay *Order to Allow Respondent Time to Appeal* by Juliana Escobar Restrepo. (Fankbonner, Edgar) (Entered: 04/04/2025) |
| 04/04/2025 | 65 | Letter *joint letter re: return logistics* by Sebastian Correa Morales (Banuchis, Michael) (Entered: 04/04/2025) |
| 04/07/2025 | 66 | NOTICE OF APPEAL by Juliana Escobar Restrepo. (Fankbonner, Edgar) (Entered: 04/07/2025) |
| 04/07/2025 | | APPEAL FILING FEE DUE re 66 Notice of Appeal Payment in the amount of $605.00, can be made in person to the clerks office, or mailed in or paid online with the event *Civil Case Appeal Filing Fee*. (VJ) (Entered: 04/07/2025) |
| 04/07/2025 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 66 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 04/07/2025) |
| 04/07/2025 | 67 | Letter *re: costs* by Sebastian Correa Morales (Banuchis, Michael) (Entered: 04/07/2025) |
| 04/07/2025 | 68 | RESPONSE in Opposition re 64 Letter MOTION to Stay *Order to Allow Respondent Time to Appeal* filed by Sebastian Correa Morales. (Banuchis, Michael) (Entered: 04/07/2025) |
| 04/09/2025 | 69 | Letter *re pre-motion conference* by Sebastian Correa Morales (Banuchis, Michael) (Entered: 04/09/2025) |
| 04/09/2025 | 70 | **MEMORANDUM & ORDER**: For the reasons stated, respondent's Motion 64 is DENIED. However, an administrative stay shall issue until April 14, 2025, to allow respondent to seek a stay from the United States Court of Appeals for the Second Circuit. Barring such a stay, the petitioner shall submit a proposed order of return, including precise travel details, by 12:00 p.m. on April 15, 2025. Petitioner is directed to confer with respondent and, to the extent possible, come to an agreement as to the proposed travel details. To the extent petitioner requires the Court's assistance with the issuance of L.C.'s passport, petitioner may make a new request with support for the Court's authority to order |

| | | |
|---|---|---|
| | | any such relief as requested. *See* Joint Ltr. 1 65 . The child shall be returned to Colombia no later than April 18, 2025.<br><br>Petitioner may file a motion for attorneys' fees pursuant to 22 U.S.C. § 9007(b) within 14 days of the Second Circuit's resolution of respondent's appeal. **ORDER ATTACHED.** Ordered by Judge Natasha C. Merle on 4/9/2025. (ERB) (Entered: 04/09/2025) |
| 04/10/2025 | 71 | Letter *re Child's passport* by Sebastian Correa Morales (Banuchis, Michael) (Entered: 04/10/2025) |
| 04/10/2025 | | SCHEDULING ORDER re 69 Letter filed by Sebastian Correa Morales, 71 Letter filed by Sebastian Correa Morales -- A conference will be held on April 15, 2025, at 1:30 p.m. by telephone. The parties are directed to call (646) 828-7666 five minutes before the scheduled start of the conference and use meeting ID 160 635 3002 and passcode 605498. Ordered by Judge Natasha C. Merle on 4/10/2025. (AG) (Entered: 04/10/2025) |
| 04/15/2025 | 72 | Letter *re Proposed Order of Return* by Sebastian Correa Morales (Attachments: # 1 Proposed Order) (Banuchis, Michael) (Entered: 04/15/2025) |
| 04/15/2025 | | Minute Entry for proceedings held before Judge Natasha C. Merle: Status Conference held on 4/15/2025. Appearances: Michael Banuchis and Camilla Redmond Costa appeared on behalf of petitioner (also present); and Edgar Fankbonner appeared on behalf of respondent (also present). Case called. Discussion held. The Court made the following rulings: (1) Respondent shall have LC's passport photo taken today and sign the authorization needed to obtain the passport, providing the form to Petitioner directly or through counsel by this evening; (2) the parties must meet at the passport office tomorrow at 9:00 a.m.; (3) Mr. Banuchis shall submit a letter by 2:00 p.m. tomorrow notifying the Court whether the parties have resolved their dispute regarding which flight to Colombia they will take; and (4) on Wednesday and Thursday of this week, Mr. Correa shall be permitted to call LC on What'sApp at 7:00 p.m. (Court Reporter Andronikh Barna.) (AG) (Entered: 04/15/2025) |
| 04/15/2025 | 73 | **ORDER OF RETURN**: It is hereby: ORDERED, that L.C. shall be returned to Colombia, his habitual residence, on or before April 18, 2025, in the care and company of petitioner and respondent; and it is further ORDERED, that petitioner, respondent, and L.C. will travel on the same flights from New York, New York to Medellin, Colombia, on April 18, 2025; and it is further ORDERED, that the Clerk of Court shall release L.C.'s two passports to petitioner or petitioner's counsel, for the purposes of L.C.'s return to Colombia, on or before April 16, 2025. **SEE ATTACHED ORDER**. Ordered by Judge Natasha C. Merle on 4/15/2025. (AG) (Entered: 04/15/2025) |
| 04/16/2025 | 74 | Letter *re Return Logistics* by Sebastian Correa Morales (Banuchis, Michael) (Entered: 04/16/2025) |
| 04/16/2025 | | CLERK'S ANNOTATION re 73 Order of Return - Two passports for the minor child LC have been released to petitioner, Sebastian Correa Morales on this day, Wednesday, April 16, 2025. (TLH) (Entered: 04/16/2025) |
| 04/19/2025 | 75 | Letter *re Child's arrival in Colombia* by Sebastian Correa Morales (Banuchis, Michael) (Entered: 04/19/2025) |
| 04/21/2025 | 76 | USCA Appeal Fees received $ 605 receipt number 100020491 re 66 Notice of Appeal filed by Juliana Escobar Restrepo. (VJ) (Entered: 04/23/2025) |
| 04/23/2025 | | Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 66 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 04/23/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 10/20/2025 12:25:50 | | | |
| **PACER Login:** | escobar.juliana | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:24-cv-07951-NCM-TAM |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SEBASTIAN CORREA MORALES,

*Petitioner*,

– against –

JULIANA ESCOBAR RESTREPO,

*Respondent.*

**FINDINGS OF FACT &
CONCLUSIONS OF LAW**
24-cv-07951 (NCM) (TAM)

**NATASHA C. MERLE**, United States District Judge:

Before the Court is petitioner's Verified Petition for the Return of Child to
Colombia ("Petition") against respondent pursuant to The Hague Convention on the Civil
Aspects of International Child Abduction ("Convention") and the International Child
Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001 *et seq*. Pet., ECF No. 1. Petitioner
seeks return of the parties' five-year old child, L.C., to Colombia from New York, where
L.C. currently resides with respondent. For the reasons stated below, the Court finds that
respondent wrongfully retained L.C. in New York on May 16, 2024, in violation of the
Convention. Accordingly, the Court **GRANTS** the Petition and orders the return of L.C.
to Colombia.

## BACKGROUND

### I.     Findings of Fact

Pursuant to Federal Rule of Civil Procedure 52, the Court finds the following facts
based on its review of the trial record. Fed. R. Civ. P. 52(a)(1). Unless otherwise indicated,

the parties have established the following facts by a preponderance of the evidence. That evidence includes live testimony and documentary exhibits admitted at trial. The Court also draws on the parties' joint proposed findings of fact where appropriate.

### A.   2014–2021: The Parties' Relationship

Petitioner, Sebastian Correa Morales, and respondent, Juliana Escobar Restrepo, were both born in Medellin, Colombia. Tr. 66:5, 195:14.[1] Respondent lived in the United States for twenty years beginning at nine years of age. Tr. 195:15–20. She is a citizen of the United States and Colombia. *See* Tr. 11:7–9, 197:1–15, 265:13–14.

Petitioner and respondent met in Colombia and became romantically involved around October 2014, during which time respondent was in Colombia for roughly three months studying for her medical exam. Tr. 66:10–13, 196:10–13. Soon after respondent returned to New York in January 2015, petitioner relocated to New York to live with her in July 2015. Tr. 67:6–7, 196:18–25. They married in New York in September 2015. Tr. 66:19–23. Through respondent, petitioner became a citizen of the United States and holds dual citizenship with Colombia. Tr. 119:4–9, 159:17–18, 197:3–14.

From 2017 to 2019, respondent attended a physician assistant's program, from which she received a master's degree in 2019. Tr. 197:20–198:9. In September 2019, when respondent was pregnant with L.C., the parties moved together to Florida. Tr. 198:9–16. In October of that same year, respondent became certified to practice as a physician's assistant in the United States. Tr. 198:20–21. Respondent gave birth to the child, L.C., in

---

[1]    The transcripts for the two-day Hearing, ECF Nos. 60, 61, are herein referred to collectively as the "Transcript."

January 2020 in Miami, Florida. PX2.[2] Due to the COVID-19 pandemic and being a new mother, respondent did not begin working as a physician's assistant until January 2021, when she joined a psychiatrist's office at which she provided telemedicine services. Tr. 199:3–11.

At the end of that year, the parties sold some of their furniture and moved with L.C. and the rest of their belongings to Medellin, Colombia in December 2021. Tr. 69:18–25, 71:17–25, 202:18–19.

### B.    2021–2024: Life in Colombia

The parties lived together in Colombia until they separated in August 2022. Tr. 211:5–11. At first, they lived together and divided their time between their mothers' houses in El Carmen and Itagui while they worked on building a house in El Carmen. Tr. 71:14–16, 72:18–21, 202:2–14. El Carmen is located in a rural area roughly 80 miles outside of Medellin; Itagui is located near to Medellin. Tr. 202:7, 203:1–17. The house in El Carmen belonged to the parties, although petitioner's mother held the title.[3] Tr. 74:5–24, 202:2–14, 267:11–14.

By November 2022, the parties each moved into their respective mothers' houses, both located in Itagui and roughly a five minutes' drive apart. Tr. 75:2–3, 212:12–20. During this time, the parties co-parented L.C., who stayed with petitioner every other

---

[2]    Throughout this Opinion, petitioner's exhibits are referred to as "PX1," PX2," and so on; respondent's exhibits are referred to as "RXA, RXB," and so on.

[3]    The record is not clear whether petitioner's mother still owns the land on which the house sits. Petitioner testified that his mother "sold" the parties the "land but she offered financing for us . . . [and] said I should deal with building the house and then we can figure out what the rest of the payments for the land would be." Tr. 74:14–17.

3

weekend and visited with petitioner during the week. Tr. 75:4–9, 213:14–16. Otherwise, L.C. primarily lived with respondent. Tr. 213:4–18.

L.C. is a citizen of the United States and Colombia and holds passports from each country. Tr. 99:19–21, 225:2; PX2; PX3. While living in Colombia, L.C. received medical care; was baptized surrounded by friends and family; attended day care and pre-school; participated in activities, such as horseback riding lessons, swimming lessons, bike riding lessons, and soccer; and had play dates with friends. PX4; Tr. 79:9–17, 80:16–23, 81:5–10, 82:1–3, 87:8–10, 88:25–89:7. L.C. was last seen by his pediatrician in Colombia on January 24, 2024, two days before he left for the United States, and is enrolled in health insurance in Colombia through November 2025. PX8; PX21; Tr. 80:9–12, 268:22–269:6.

Due to privacy laws, respondent was unable to practice remotely as a physician's assistant in the United States while located in Colombia and became unemployed in April 2022. Tr. 206:11–208:13. Respondent was unable to find other employment because the position of physician's assistant does not exist in Colombia, and her master's degree did not aid in her job search outside of the United States. Tr. 208:18–209:4. Upon the parties' separation, respondent indicated to petitioner on multiple occasions that she wanted to move back to the United States, in part to find work in her field. Tr. 215:1–22. To that end, respondent traveled to New York City in September 2023 to explore employment opportunities. Tr. 215:9–11, 324:7–18.

Around August 2023, petitioner sought assistance with filing for divorce from respondent. Tr. 239:5–16. The parties met with a legal professional, Maribel Delmoral, in Medellin that month. Tr. 239:13–240:8. Later, in February 2024, Delmoral filed a Verified Complaint for Divorce ("Complaint"), signed by petitioner, in New Jersey state

court and emailed service of the Complaint to respondent on April 10, 2024. Tr. 240:17–24; RXA. The Complaint lists residential addresses for petitioner in New Jersey and respondent in New York and calls for respondent to retain full physical custody of L.C. RXA. The Complaint is not signed by respondent. RXA.

In 2023, the parties' marriage counselor, Dr. Jorge Cadena, referred them to Elizabeth Gomez for counseling regarding co-parenting. Tr. 8:2–6. The parties had approximately 27 joint sessions with Gomez starting in May 2023 through May 2024, and petitioner continues to attend individual sessions with Gomez. Tr. 8:25–9:9.

Respondent made the decision to move to the United States in November 2023. Tr. 130:11–16. Around that time, petitioner sent respondent several voice messages regarding the move:

> RXL: "When do we have the appointment with Elizabeth [Gomez]? Because I know about your plans but I want to go over some things with her and you. What are we going to do? Who is going to take care of him? Do you have a house? all that kind of things, so I would like us to make all that very clear before there is an exact date. That's why I'm telling you not to take him out yet or say that the seat . . . if I lose the money, it's not a problem, but I do want us to discuss everything. When is the next appointment we had with Elisa?";
>
> RXM: "Well, I don't think there's much difference, after mid-January, it's not that expensive, but before that I would like us to have everything very clear, after what we said before. But I do want to know who is going to take care of him? What are you going to do? Where are you going to live?";
>
> RXN: "Ah! It's not that I'm doubting that, because I think you're a good mother. I just, as a dad, as the other parent, want to know how he's going to be, where he's going to be. it seems to me the most normal thing, the fairest thing, and that we both agree. I'm not saying you can't take him, even though I don't want you to, because I know you're a good mother and that the children belong to the mother, even though I would

5

like to keep him. But I would like to be very clear about everything that's going to happen with him."

In a later exchange, respondent sent petitioner a text message, explaining:

> You want a lot of answers, but I am trying to coordinate everything. You say, where are you going to live, well it is not that easy, I need someone to serve me as a guarantor to rent something, since I have no income to show for it. So, you want a lot of answers, but you do not understand everything I am doing.

RXO.

During their sessions with Gomez, the parties discussed potential aspects of respondent's move to the United States. Tr. 9:21–10:14, 11:20–12:7.[4] Those discussions included possible locations for the move, respondent's employment, L.C.'s daycare, and child support payments. Tr. 13:10–23, 20:14–22:22, 52:5–8, 91:9–24.

Around November or December 2023, respondent decided to move to Florida instead of New York and expressed to petitioner that she would do so "depending" on her employment and "work/life balance." Tr. 221:3–17. In late 2023 and early 2024,

---

[4]     Prior to the Hearing, petitioner moved to exclude the testimony of Dr. Cadena pursuant to Federal Rule of Evidence 501 and the privilege between a therapist and patient. Pet. Mot. Limine 4, ECF No. 19-1. At the final pretrial conference, the Court granted petitioner's motion in part, finding that petitioner's statements to Dr. Cadena were protected by the "psychotherapist privilege," which "covers confidential communications made to licensed psychiatrists and psychologists" as well as "licensed social workers in the course of psychotherapy." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996); *see* Minute Entry dated Feb. 12, 2025. No such motion or objection was made prior to or during the Hearing as to Gomez. Thus, Gomez testified as to the parties' sessions with her. While the Court finds the majority of Gomez's testimony credible, it declines to rely directly on her testimony regarding respondent's statements during these sessions in order to respect respondent's psychotherapist privilege, to the extent it was implicated by Gomez's testimony. *See* Tr. 35:22–36:1 (Gomez explaining that she is "not a psychologist" but rather a "medical specialist" in "family therapy" and "mental health" and holds a "diploma on child care and child-rearing").

respondent prepared for the move. She sold her car to petitioner, informed L.C.'s daycare that he would not return, and gave away some of her belongings. Tr. 222:12–223:3, 223:19–22, 224:6–15. Respondent purchased a one-way airplane ticket from Medellin to Orlando, Florida. Tr. 224:18–20. That same month, petitioner registered the child as a Colombian citizen with the Office of Civil Registry in Colombia. Tr. 219:10–13; PX2. Petitioner then provided a written authorization, as required by Colombian law, for L.C. to travel to the United States from January 26, 2024, to May 15, 2024, for purposes of "tourism." PX7.

### C.    *January 2024: Travel to the United States*

On January 26, 2024, respondent traveled from Colombia to the United States with L.C. Tr. 227:1–3. That day, respondent sent petitioner a text message:

> This marks a new beginning for [L.C.] and me! I just wanted to thank you for the good times and also for the bad times, as they helped me grow and understand many things! We continue to share a common treasure, and I give you my word that I will take great care of him. I wish you the best and I hope you continue your therapies, as I told you one day I can never wish you anything bad because you are still my son's dad, and you are his example!

RXW. Petitioner responded, in part: "I want the best for you. You will always be someone very important in my life. I am so sorry that I hurt you and could not give you the best and what you needed. But I am here to support you and to let you know that you can always count on me." RXW.

On arriving in the United States, respondent and L.C. moved in with respondent's cousin and her family in Kissimmee, Florida. Tr. 227:4–18; RXB1–B6. While living there, L.C. attended pre-school and daycare, studied English, received medical care, spent time with family, and played with children in the neighborhood. Tr. 228:21–25, 229:5–236:12,

335:14–24, 341:14–342:20; RXB1-6. In March of that year, petitioner and his mother visited L.C. in Florida, and petitioner again visited L.C. in Florida in April 2024. Tr. 149:9–11, 238:15–239:1. During each of these trips, petitioner picked up L.C. and stayed with him without respondent. Tr. 149:17–23, 238:15–24. On April 28, 2024, petitioner, with respondent's consent, purchased tickets for respondent and L.C. to travel from Orlando, Florida, to Medellin, Colombia on May 16, 2024—the day after the travel authorization expired. PX9; Tr. 285:22–286:1; *see also* RXAA.

Respondent and L.C. continued to reside in Florida until relocating on May 4, 2024, to the house of respondent's mother and stepfather in New York. Tr. 255:8–9, 278:14–15, 281:5–7, 330:1–9. Though respondent originally traveled to New York to visit her mother who was having surgery, she then informed petitioner that she and L.C. would stay in New York. Tr. 241:10–11, 278:10–279:6, 311:8–10. Two days after the move to New York, petitioner sent respondent a text message stating, "You're making unilateral decisions that you wouldn't like me to make." Tr. 279:7–18. On May 14, 2024, respondent messaged petitioner that L.C. would not travel to Colombia as previously scheduled. Tr. 104:5–20. Upon learning this, petitioner attempted to arrange an "emergency session" between the parties and Gomez. Tr. 55:22–23, 105:21–23. Respondent and L.C. did not return to Colombia on May 16, 2024. Tr. 103:21–22.

During the rest of that month, L.C. did not attend daycare or school or participate in extracurricular activities. Tr. 281:13–18. Also in May, respondent spoke with Jenny Gallego, a mutual friend of the parties, regarding whether L.C. would attend Gallego's son's birthday party in Colombia. Tr. 182:20–25, 183:1–12. At first, respondent said that

8

L.C. would attend the party, but later told Gallego that L.C. would not travel to Colombia. Tr. 183:2–9.

In New York, respondent and L.C. initially resided with family in Fresh Meadows, Tr. 281:5–7, 330:8–9, until June 2024 when they relocated to Queens. Tr. 292:12–16, 109:1–9. At that time, respondent did not disclose to petitioner the address where she and L.C. were living in Queens because she feared that petitioner would take L.C. to Colombia without her permission. Tr. 109:1–110:5. Respondent also feared that if L.C. traveled to Colombia, petitioner would refuse to provide a written authorization for L.C. to return to the United States. Tr. 104:12–14, 248:20–24; *see also* RXCC (respondent expressing to petitioner via text message that she "hope[d] you are not thinking of taking [L.C.] to Colombia without telling me"). In August 2024, petitioner took L.C. on a trip to Florida, without respondent's consent. RXTT; *see also* Tr. 260:10–14. In text messages that followed, petitioner explained his travel plan; that his intention was not to take L.C. to Colombia, including because he did not have his passports; and that he was "afraid" respondent would not allow L.C. to travel with him because she had "acted unilaterally." RXTT 45. He continued:

> I let him come here. And you and I had an agreement. That he would go on vacation to Colombia, where the whole family waits for him and loves him. That it was Florida. None of that was fulfilled. And I am not telling you because of threats or anything, they are just facts.

RXTT 46.

## II.    Procedural History

Petitioner filed this action against respondent pursuant to the Convention on November 15, 2024, seeking return of L.C. to Colombia. Pet. ¶¶ 1, 6. Petitioner moved the

Court for expedited proceedings and a temporary restraining order ("TRO") against respondent. Pet.'s Mot. to Expedite Proceedings and TRO, Prelim. Inj., ECF No. 5 ("Motion"). The Court directed respondent to show cause why the Court should not grant the relief requested in the Motion and issued a TRO prohibiting respondent from removing the child from the State of New York and directing respondent to deposit L.C.'s passports and travel documents with the Clerk of Court pending resolution of the Petition. Order to Show Cause and TRO, ECF No. 6. Thereafter, the Court held a show cause hearing on November 26, 2024, at which petitioner was represented by counsel and respondent appeared *pro se*. *See* ECF Minute Entry dated Nov. 26, 2024.

On December 5, 2024, the Court extended the injunction on plaintiff's consent until a hearing on the Petition and, based on the parties' representation that they were "open to mediation," Joint Ltr., ECF No. 9, referred the parties to Magistrate Judge Taryn A. Merkl for purposes of conducting a settlement conference. ECF Order dated Dec. 5, 2024. The parties were unable to settle the dispute prior to a hearing.

The Court set a pretrial schedule based on the parties' stipulated proposal, including deadlines for written discovery, motions *in limine*, pretrial proposed findings of fact and conclusions of law, and trial briefs, and scheduled a hearing on the Petition for January 22 and 23, 2025. ECF Order dated Dec. 23, 2024; *see also* Sched. Stip., ECF No. 13. On the parties' joint requests, the Court twice granted amendments to the pretrial schedule, including two adjournments of the hearing dates. *See* ECF Orders dated Jan. 2, 2025, Jan. 15, 2025. At the final pretrial conference on February 12, 2025, the Court issued rulings on the record as to the parties' motions *in limine* and directed the parties to submit revised witness and exhibit lists. *See* ECF Minute Entry dated Feb. 12, 2025.

A two-day hearing on the Petition proceeded on February 24 and 26, 2025 (the "Hearing"). Seven witnesses testified in person or via remote access: the parties (in person); Elizabeth Gomez Gonzales (remote); Jenny Gallego Cano (remote); Dr. Jorge Cadena Solano (remote); Ana Escobar del Carmen Restrepo (in person); and Juan Ocampo (remote). *See* Ex. and Witness List, ECF No. 53. At the close of the Hearing, the Court again encouraged the parties to discuss the possibility of settling their dispute without Court intervention given the narrow legal question presented pursuant to the Convention. Tr. 377:19–379:11. The parties submitted separate and joint proposed findings of fact and conclusions of law on March 5, 2025. ECF Nos. 56, 57, 58.

## DISCUSSION

### I.    Applicable Law

#### A.    *Hague Convention & ICARA*

The Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, S. Treaty Doc. No. 99-11, reprinted in 51 Fed. Reg. 10,494 (Mar. 26, 1986) directs courts of contracting states to order the return of a child wrongfully removed from or retained outside of the child's country of habitual residence. *See Golan v. Saada*, 596 U.S. 666, 669 (2022).[5] The United States and Colombia are each contracting parties to the Convention. *Saavedra v. Montoya*, No. 21-cv-05418, 2023 WL 2910654, at *13 n.26 (E.D.N.Y. Apr. 12, 2023), *appeal withdrawn*, No. 23-cv-00694,

---

[5]    Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

2023 WL 5600054 (2d Cir. Aug. 4, 2023).[6] Congress implemented the Convention in the United States through ICARA. The Convention's "core premise is that the interests of children in matters relating to their custody are best served when custody decisions are made in the child's country of habitual residence." *Golan*, 596 U.S. at 670. Accordingly, "return is merely a provisional remedy that fixes the forum for custody proceedings." *Id.* at 671.

   i. <u>*Prima Facie* Case</u>

  The party petitioning for relief pursuant to the Convention has the initial burden to show by a preponderance of the evidence that the child was wrongfully removed or retained. *Golan*, 596 U.S. at 671. This requires three elements: "(1) the child was habitually resident in one State and has been removed to or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the removal or retention." *Royal Borough of Kensington & Chelsea v. Bafna-Louis*, No. 23-cv-00470, 2023 WL 6867135, at *1 (2d Cir. Oct. 18, 2023) (citing *Gitter v. Gitter*, 396 F.3d 124, 130–31 (2d Cir. 2005)). The petitioner must establish each element by a preponderance of the evidence. 22 U.S.C. § 9003(e)(1)(A).

  The first element, habitual residence, is not defined in the Convention. *Monasky v. Taglieri*, 589 U.S. 68, 76–77 (2020). Rather, a child's habitual residence is where he or she is "at home." *Id.* at 77. This depends on the totality of the circumstances and requires

---

[6] *See also Convention of 25 October 1980 on the Civil Aspects of International Child Abduction: Status Table*, Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/?cid=24 [https://perma.cc/T9J3-JZ4X] (last visited Mar. 28, 2025).

courts to remain "sensitive to the unique circumstances of the case and informed by common sense." *Id.* at 77–78, 84; *see also Pozniak v. Shwartsman*, No. 20-cv-02956, 2021 WL 965238, at *9 (E.D.N.Y. Mar. 15, 2021) ("It would defy common sense . . . to conclude that [a child] was at home in the United States because he took vacations to various cities in the United States."). A child's habitual residence may turn on a variety of facts, none of which will be dispositive in every case. *Monasky*, 589 U.S. at 78. These include "where a child has lived, the length of time there, acclimatization, and the purposes and intentions of the parents." *Grano v. Martin*, 821 F. App'x 26, 27 (2d Cir. 2020). By approaching the habitual residence determination with "maximum flexibility," courts can stay faithful to the "core premise" of the Convention to ensure that custody determinations are made in the child's home country. *Monasky*, 589 U.S. at 72, 79.

When considering habitual residence, especially for younger children, "the intentions and circumstances of caregiving parents are relevant." *Monasky*, 589 U.S. at 78; *see also Gitter*, 396 F.3d at 135 (the parties' "shared intent" is relevant but not dispositive). The parents' intent can be determined through "actions as well as declarations." *Gitter*, 396 F.3d at 134. Although an "actual agreement" is not required to establish habitual residence, *Monasky*, 589 U.S. at 76, where a petition alleges that a child's habitual residence has changed from one country to another, the parties' "latest shared intent" is instructive, *Gitter*, 396 F.3d at 134.[7] To assess whether the parties

---

[7] The Supreme Court held in *Monasky* that there need not be an agreement between a child's parents in order to establish where that child is at home. But the *Monasky* Court was concerned with a specific circumstance: where an infant's parents have never come to an agreement as to where he or she will be raised, a requirement that the parties come to such an agreement would mean that these children would *never* have an established habitual residence. As the *Monasky* Court explained: "An actual-agreement requirement

intended to change a child's habitual residence, courts consider "whether the parents formed a shared, settled intention to abandon the child's previous habitual residence" and "whether the parents have mutually intended that the child acquire a new habitual residence in a new location." *Matter of E.Z.*, No. 1:21-cv-06524, 2021 WL 5106637, at *19 (S.D.N.Y. Nov. 2, 2021); *see also Ermini v. Vittori*, 758 F. 3d 153, 159 (2d Cir. 2014) (assessing parents' "settled intent"). Conditional intent dependent on future circumstances is insufficient to change a child's habitual residence. *See Gitter*, 396 F.3d at 135.

Where a petition alleges that an older child has been wrongfully retained rather than wrongfully removed, the child's acclimatization to the United States is also relevant to the habitual residence determination. *Cf. Tatari v. Durust*, No. 24-cv-06930, 2024 WL 4956307, at *5 (E.D.N.Y. Dec. 3, 2024). Facts relevant to a child's acclimatization include any change in location for "an appreciable period of time"; the child's age; the "immigration status of child and parent"; the child's academic, sports, and social activities; the child's language proficiency; the location of the child's "personal belongings"; and any other "meaningful connections with the people and places in the child's new country." *Monasky*, 589 U.S. at 78 n.3. In other words, acclimatization occurs

---

would enable a parent, by withholding agreement, unilaterally to block any finding of habitual residence for an infant . . . [and] create a presumption of no habitual residence for infants, leaving the population most vulnerable to abduction the least protected" under the Convention. *Monasky*, 589 U.S. at 81. That is materially different from cases like *Gitter*, in which the question before the Court is whether the child's habitual residence has *changed* from one country to another. *See Gitter*, 396 F.3d at 135–36 (remanding for additional findings as to acclimatization regarding whether the child's "habitual residence changed from the United States to Israel, or whether his parents' last shared intent that his habitual residence be in the United States should control").

when a child's habitual residence has changed to such an extent that removal would "be tantamount to taking the child out of the family and social environment in which [his or her] life has developed." *Gitter*, 396 F.3d at 134.

      ii.   <u>Affirmative Defenses</u>

If the petitioner meets the *prima facie* burden to establish wrongful retention or removal, the respondent may raise one or more of several defenses established by the Convention and outlined by ICARA. *See Golan*, 596 U.S. at 670–71, 671 n.2; 22 U.S.C. § 9003(e)(2). These defenses are "narrow": they do not provide an avenue for courts to "exceed [their] Hague Convention function" by making a custody determination. *Swett v. Bowe*, 733 F. Supp. 3d 225, 242–43 (S.D.N.Y. 2024), *aff'd sub nom. Urquieta v. Bowe*, 120 F.4th 335 (2d Cir. 2024). Furthermore, even if a defense is sufficiently established, the Court maintains equitable discretion to nonetheless order return of the child in "exceptional cases." *Swett*, 733 F. Supp. 3d at 293. That is because "[e]stablishing a defense merely lifts the Convention's return requirement" but "does not *forbid* return." *Id.* (emphasis in original).

As relevant to this action, a respondent may raise the affirmative defense of consent pursuant to Article 13 of the Convention. 22 U.S.C. § 9003(e)(2). Respondent must establish by a preponderance of the evidence that petitioner consented to the removal and retention of the child abroad "for an indefinite or permanent time period." *In re Kim*, 404 F. Supp. 2d 495, 516 (S.D.N.Y. 2005); *see also* 22 U.S.C. § 9003(e)(2)(B). The "key to the consent inquiry is the petitioner's subjective intent." *In re Kim*, 404 F. Supp. 2d at 516. Courts assessing a defense of consent must "consider what the petitioner actually contemplated and agreed to in allowing the child to travel outside [his or her]

home country" as well as the "nature and scope" of that agreement, including "any conditions or limitations." *Baxter v. Baxter*, 423 F.3d 363, 371–72 (3d Cir. 2005). Allowing the child to travel temporarily or for a definite period is not sufficient to constitute consent to removal or retention. *Id.* (citing *Fabri v. Pritikin-Fabri*, 221 F. Supp. 2d 859, 871–72 (N.D. Ill. 2001) ("Many cases begin with a parent's taking the child away from home for a vacation or visit with the consent of the other parent, but nevertheless result in a Hague Convention order compelling the child's return."); *In re Kim*, 404 F. Supp. 2d at 516 (noting that "it is often the case that a parent consents to the removal of a child to a foreign location for a temporary visit, but not to a longer or even indefinite stay in that country."). When considering the contours of a petitioner's consent, courts may look to "conduct after removal" or retention to probe whether "consent was present at the time of removal" or retention. *Gonzalez-Caballero v. Mena*, 251 F.3d 789, 794 (9th Cir. 2001).

### B.    Colombian Contract & Custody Law

In actions pursuant to the Convention, federal courts assessing a purported agreement between the parties must first determine the substantive law that will guide that assessment. *A.A.M. v. J.L.R.C.*, 840 F. Supp. 2d 624, 632 (E.D.N.Y.), *aff'd sub nom. Mota v. Castillo*, 692 F.3d 108 (2d Cir. 2012). While exercising federal question jurisdiction, courts "generally apply federal, rather than state, choice of law analysis," which calls for application of the law with the "most significant relationship" to the parties' agreement. *Id.* at 632–33. Still, some federal courts apply the choice of law rules of the state in which the court sits—here, New York. *Id.* at 633. However, because New York state choice of law rules are "for all practical purposes identical" to federal choice of

law rules, the Court need not wade into this "unsettled" legal territory. *Id.* at 633–34; *see also Pignoloni v. Gallagher*, No. 12-cv-03305, 2012 WL 5904440, at *22 (E.D.N.Y. Nov. 25, 2012), *aff'd*, 555 F. App'x 112 (2d Cir. 2014). Here, the parties' purported agreement regarding any removal or retention of L.C. in a location outside of Colombia occurred between the parties while resident in Colombia, where petitioner still resides. Accordingly, Colombian contract law applies to the parties' alleged agreement in this action. *See A.A.M.*, 840 F. Supp. 2d at 634 (concluding that Mexican contract law applied to suit under Convention in part because Mexico "has a strong interest in protecting its citizens' justifiable expectations" and "[a]ny interest of New York . . . is ephemeral and transient"). Accordingly, the Court takes judicial notice of the following contract and custody laws of Colombia.[8]

Pursuant to Colombian law, a contract "is an act by which a party obligates himself towards another to give, to do, or not to do something." Civil Code of Colombia ("Civ. Code Col."), Art. 1495 (Julio Romanach, Jr., trans.) (2022). Contracts can be conditioned "on a future event that may or may not occur," which may fail: "A positive condition is considered to have failed, and a negative condition fulfilled, when it becomes certain that the event contemplated will not occur, or when the time within which the event must have occurred has expired and the event has not occurred." *Id.* at Arts. 1530, 1531, 1539. Additionally, intent is crucial to contract interpretation: "[w]hen the intent of the parties is clearly known, the intent prevails over the literal meaning of the words." *Id.* at Art. 1618.

---

[8]     The parties did not present any expert testimony as to interpretation or sources of Colombian law. Accordingly, the Court relies on the Romanach translation as the official source of the Civil Code of Colombia in English.

Furthermore, the Convention calls for the application of Colombian law regarding custody. As discussed *infra*, the child's habitual residence at the time of the alleged wrongful retention was Colombia. Pursuant to Article 3 of the Convention, the Court must assess a petitioner's custody rights as "attributed . . . under the law of the State in which the child was habitually resident immediately before the removal or retention." Conv. Art. 3(a), 14 (permitting courts to take judicial notice of foreign law for purposes of Article 3); *see also A.A.M.*, 840 F. Supp. 2d at 634. Pursuant to the Civil Code of Colombia, "parents must jointly . . . take care of the upbringing and education of their . . . children." Civ. Code Col., Art. 253. The code also establishes parental authority over non-emancipated children: a "bundle of rights" that "shall be jointly exercised by" both parents. Civ. Code Col., Art. 288. These parental rights require a non-traveling parent to provide authorization for a child to travel outside of the country with one parent, including the location, purpose, and dates of travel. Colombia Law 1098 of 2006, Childhood and Adolescence Code, Art. 110 ¶ 1.

## II.    Conclusions of Law

This action concerns one central question: should L.C. be returned to Colombia such that any custody disputes will be resolved by the courts of Colombia? For the reasons stated below, the Convention requires the return of L.C. to Colombia. Specifically, the Court finds that Colombia was the place of L.C.'s habitual residence immediately prior to his wrongful retention in the United States on May 16, 2024; petitioner was exercising his parental custody rights under Colombian law at that time, and those rights were breached by the wrongful retention; and petitioner's limited consent to L.C.'s travel to the United States was dependent on multiple conditions that were not satisfied. Accordingly, L.C.

18

was wrongfully retained in the United States on May 16, 2024, in violation of the
Convention and must be returned to Colombia.

### A.    Petitioner's Prima Facie Case

Petitioner has met his initial burden to show by a preponderance of the evidence
that L.C. was wrongfully retained in the United States under the Convention.

#### 1.    Habitual Residence

L.C.'s habitual residence at the time of the retention was Colombia. Prior to
January 2024, the parties intended to, and did, establish Colombia as L.C.'s habitual
residence. When respondent traveled with L.C. to the United States between January and
May 2024, the parties did not have a shared and settled intent to change L.C.'s habitual
residence to Florida or New York. Nor does the record establish that L.C. became
acclimatized during his roughly four-month tenure in the United States prior to the date
of the alleged wrongful retention.

#### a.    Latest Shared Intent

L.C. was born in Florida in January 2020 and resided there for roughly the first
two years of his life. In December 2021, the parties moved with L.C. to Colombia and had
a shared intent to change L.C.'s habitual residence at that time. The parties sold some of
their furniture in the United States and otherwise brought their belongings to Colombia,
where they had been building a house. For roughly two years, from age two to four, L.C.
lived in Colombia, where he attended daycare and pre-school, engaged in multiple
extracurricular activities, and interacted with his extended paternal and maternal family
in the area. Indeed, respondent has acknowledged that L.C.'s habitual residence at this

time was Colombia. Tr. 367:23–368:3. Accordingly, the Court finds that L.C.'s habitual residence in January 2024 was Colombia.[9]

That represents the parties' latest shared intent. In January 2024, respondent traveled with L.C. to Orlando, Florida. Petitioner has established a preponderance of the evidence supporting that the parties did not share a settled intent or mutual agreement to change L.C.'s habitual residence at that time. Instead, the parties discussed a potential change to L.C.'s habitual residence dependent on certain conditions, as discussed *infra*, including that L.C. and respondent live in Florida and L.C. travel to Colombia in mid-May 2024.

As an initial matter, the Court credits respondent's testimony that she traveled to the United States in order to find "work and stay" in the country in January 2024. 218:18–23, 220:23–221:2, 221:14–23. Respondent explained that she had already embarked on an exploratory networking trip to New York in September 2023. Tr. 215:10–11, 218:4–5, 332:7–18. Furthermore, respondent purchased a one-way ticket to Florida, sold her car in Colombia, and packed up the belongings that she could travel with to the U.S. 223:19–224:20. *Cf. Pignoloni*, 2012 WL 5904440, at *40 (finding that the parties' mutual intent was to retain Italy as the children's habitual residence in part because respondent left her

---

[9]     At the Hearing, counsel for respondent argued that "petitioner all but forced Mr. Escobar to move to Colombia at the end of 2021." Tr. 364:11–12. This is not supported by the record. Petitioner testified that respondent "had some reservations" about the move to Colombia in 2021, Tr. 121:22–24, and respondent testified that she made the decision to move at that time because she wanted to raise L.C. together with petitioner, who also provided "assurance that he was going to help [her] financially." Tr. 201:18–24. There is no indication that respondent was forced to move to Colombia against her will or that L.C. lived there because respondent was "coerced into remaining there." *Monasky*, 589 U.S. at 78.

belongings in Italy and purchased return tickets to Italy). Accordingly, the Court does not find credible petitioner's testimony that the purpose of the January 2024 travel was simply an "exploratory" trip so that respondent could seek employment, rather than for respondent to remain in the United States. Tr. 98:25, 99:8, 155:14–15.

The Court does find credible, however, petitioner's testimony that he did not agree that L.C. would move to the United States permanently at that time. Petitioner repeatedly testified that he discussed several "possible conditions" for respondent and L.C. to travel to the United States. Tr. 91:11; *see also* Tr. 51:2–7 (Gomez testifying that "there was never an agreement with [petitioner] that it would be a permanent relocation"). This is consistent with petitioner's message to respondent in November 2023 indicating a desire to come to an agreement as to the circumstances of L.C.'s move: "I'm not saying you can't take him, even though I don't want you to, because I know you're a good mother and that the children belong to the mother . . . . But I would like to be very clear about everything that's going to happen with him." RXN; *see also* RXL, RXM.

Specifically, petitioner testified that there were several conditions on L.C.'s move: that they would travel "exclusively to Orlando"; petitioner would have a "daily video call" with L.C.; respondent would obtain employment and housing; petitioner would visit L.C. in the United States; L.C. would visit petitioner in Colombia; and L.C. would "live according to the same living standards he was living under in Colombia." Tr. 91:9–24, 93:1–21, 100:12–19, 101:9–13, 101:20–25, 102:4–15, 135:1–3, 135:18. Petitioner testified that he discussed these conditions with respondent, who agreed to abide by them, and he would no longer agree for L.C. to live in the United States if the conditions were violated.

Tr. 93:1–21. These conditions are discussed in more detail *infra*, in the context of respondent's consent defense.

At the hearing, respondent maintained that the parties had no "actual agreement" and petitioner placed no conditions on L.C.'s move. Tr. 283:2. Instead, respondent testified that the parties merely had "a lot of talks" and there was only a consensus as to the amount of child support petitioner would pay to respondent. Tr. 282:3–283:4. However, the Court does not find this credible. The evidence in the record, including petitioner's involvement in L.C.'s life, his expression of wanting to know what L.C.'s life would be like in the United States, his desire to have control over L.C.'s movement in and out of Colombia, and the multiple sessions the parties had with Gomez about these specific issues make it incredible that petitioner agreed that L.C. would move permanently to the United States with the only agreement in place being that of child support payments. Nevertheless, even if the Court were to accept respondent's argument that the parties never reached an agreement, this does not establish that L.C.'s habitual residence changed to the United States. Instead, the absence of an agreement would support petitioner's testimony that he did not share a settled intent to change L.C.'s habitual residence in early 2024. *See Gitter*, 396 F.3d at 131–133; *Mota v. Castillo*, 692 F.3d 108, 115 (2d Cir. 2012).

The Complaint filed in New Jersey state court which called for respondent to have full custody of L.C. does not change this determination. First, the parties met with Delmoral to discuss the Complaint in August 2023—prior to respondent's exploratory trip to New York in September 2023; the parties' discussions with Gomez and independently regarding potential conditions or agreements as to L.C.'s move to the United States; and

respondent's later decision in November 2023 to move to the United States. *See* Tr. 239:13–18. Second, respondent did not respond to or sign the Complaint. *See* RXA; Tr. 242:3–5. Had she done so, this might have indicated that the parties had reached some sort of written agreement. Further, the record does not indicate whether the parties met with Delmoral again between August 2023 and the filing of the Complaint in February 2024. Instead, petitioner testified that the document "was prepared in August [2023]" and reflected the "reality of our relationship in Colombia" at that time. Tr. 142:3–5; *see also* Tr. 166:2–6 (petitioner testifying that he did not "understand this document to give [his] consent for [L.C.] to live in the United States"). Moreover, the question under the Convention is whether the parties intended for L.C. to live in the United States or Colombia permanently—the New Jersey Complaint, if anything, addresses with whom L.C. would reside during any time within the United States. It does not outweigh the preponderance of evidence establishing that petitioner did not share a settled intent with respondent to change L.C.'s habitual residence from Colombia to the United States.

The record suggests that respondent moved to the United States with the intent to fulfill both of these conditions, which might have led to a shared agreement to change L.C.'s habitual residence. For example, respondent told the parties' mutual friend, Jenny Gallego, in May 2024 that she and L.C. would attend the birthday party of Gallego's son in Colombia later that month. Tr. 182:20–183:12. And respondent resided in Florida until early May 2024. The record indicates that the parties therefore shared an understanding that L.C.'s habitual residence had the potential to change. But that was dependent on at least two concrete conditions that had yet to be fulfilled. Thus, without a "shared, *settled* intent," L.C.'s habitual residence did not change from Colombia to the United States. *See*

*Ermini*, 758 F. 3d at 159 (emphasis added). Instead, the parties last shared an intent for L.C.'s habitual residence to be Colombia.

### b.    Acclimitization

Between January and May 2024, L.C. resided with respondent in Florida and, to a limited extent, New York. During that time, L.C. did not experience acclimatization to such an extent that his habitual residence changed from Colombia to the United States.

L.C.'s time in the United States prior to the alleged wrongful retention spanned only four months during which he moved from Florida to New York. *Cf. Papakosmas v. Papakosmas*, 483 F.3d 617, 627 (9th Cir. 2007) (finding no acclimatization where children's life in Greece was in a "permanent state of flux" including three different homes in four months). The majority of L.C.'s family was still located in Colombia, petitioner and L.C.'s paternal grandmother visited L.C. while in Florida, and L.C. retained health insurance coverage in Colombia. *See Sundberg v. Bailey*, 293 F. Supp. 3d 548, 557 (W.D.N.C. 2017), *aff'd*, 765 F. App'x 910 (4th Cir. 2019) (finding no acclimatization in part because child "maintained significant contacts" and "regular contact with her father . . . aunt and cousins" and "continue[d] to be a patient in the Swedish healthcare system").

Although L.C. attended daycare and engaged with family and friends in Florida, he did not do so during his roughly two weeks in New York. Tr. 107:9–10, 228:21–229:16, 278:1–2, 281:13–18. And while respondent presented evidence that L.C. was beginning to learn English during his time in Florida, the record does not indicate that L.C. became proficient beyond "learning some words in English." Tr. 342:12. Moreover, at this time L.C. had just turned four years old, which suggests that he was too young to become attached to two new environments in the span of a few weeks or months. *See Monasky*,

589 U.S. at 78; *Sundberg*, 293 F. Supp. 3d at 557 (finding four-year-old child "not of an age where [she is] strongly attached to any particular school or social environment").

Accordingly, the Court finds that L.C.'s habitual residence did not change to the United States—whether in Florida or New York—between January and May 2024.

### 2.   Custody Rights

Having found that L.C.'s habitual residence immediately prior to the alleged wrongful retention on May 16, 2024, was Colombia, the Court must assess whether petitioner has established the second and third elements of a *prima facie* case under the Convention. While the Court notes that respondent does not contest these elements, the burden nonetheless lies with petitioner. *See generally* Resp. Proposed Findings of Fact and Conclusions of Law, ECF No. 58.

Petitioner has met that burden. Pursuant to Colombian law, petitioner has custody rights over L.C. *See* Civ. Code Col., Arts. 253, 288. Moreover, petitioner was exercising those custody rights at the time of retention on May 16, 2024, in part because he had recently (i) obtained Colombian citizenship for L.C., Tr. 219:10–13; (ii) only authorized travel through May 15, *see* PX7; (iii) and requested assistance from the parties' counselor, Gomez, on May 15 after he learned that respondent would not return to Colombia with L.C. the next day, Tr. 55:10–23, 105:21–23.

### B.   *Respondent's Consent Defense*

Notwithstanding petitioner's *prima facie* showing that L.C. was wrongfully retained in the United States on May 16, 2024, the Convention may not require L.C.'s return to Colombia if respondent can establish an affirmative defense by a preponderance of the evidence. Respondent has not done so. Specifically, respondent has failed to

establish the defenses of consent or acquiescence[10] by a preponderance of the evidence and does not raise any other defenses. Instead, the record indicates that petitioner conditionally consented to L.C.'s relocation to the United States based on several conditions, including that L.C. live in Florida and travel to Colombia in May 2024. Because those conditions were not met, petitioner's geographically and temporally limited consent was no longer valid at the time of retention.

To support the defense of consent, respondent primarily relies on the following evidence: her testimony that the parties' "understanding was that L.C. was going to live with [her] permanently in the United States," Tr. 314:2–3; petitioner's voice message in which he stated that "children belong to the mother," RXN; and her testimony that the "tourism" designation on the travel authorization form was a formality and did not accurately represent petitioner's intent, Tr. 307:1–18. Additionally, Dr. Cadena testified that respondent did not express to him that her move to the United States was subject to any conditions by petitioner, Tr. 325:19–21, and respondent's mother testified that, based on her conversations with respondent, she understood that petitioner did not impose any conditions on respondent's move to the United States, Tr. 333:14–16. This evidence supports, at best, that there may have been a miscommunication between the parties. However, it does not constitute a preponderant showing that petitioner provided unconditional consent for L.C.'s permanent relocation.

---

[10]    As to acquiescence, there is no indication in the record that after the wrongful retention petitioner acquiesced to the child's permanent location in the U.S.—indeed, he filed this action pursuant to the Convention.

1.  Petitioner's Conditions

To the contrary, the Court finds that *petitioner* has established by a preponderance of the evidence that he placed two[11] conditions on L.C.'s potential relocation to the United States: (1) respondent and L.C. must live in Florida, and (2) L.C. must travel to Colombia in May 2024. Accordingly, petitioner's consent was limited in time and geography.

### a.   Florida

As to the first condition, the parties discussed that L.C. would be located in Florida, in part because it was geographically near to Colombia. Most compelling, respondent herself told petitioner in February 2024 via text message that she moved to Florida rather than New York "for L.C. to live better and to be closer to Colombia" even though she could "earn[] more money" in New York. Tr. 281:19–25.

Later, in August 2024, petitioner referenced an earlier "agreement" that "it was Florida" where respondent and L.C. would move, indicating that petitioner understood that he had placed a geographic condition on his consent, whether or not respondent agreed to that location. RXTT 46; Tr. 305:9–306:3; *see also* Tr. 21:15–19 (Gomez testifying that the parties' discussions included the topic of respondent living in Orlando). And petitioner testified that Florida was "closer . . . and more similar to" Colombia than was New York, and he was concerned because, as compared to Florida, New York was

---

[11]   Petitioner contends that he placed additional conditions on his consent: L.C.'s mental and physical well-being; petitioner's unfettered communication and access to L.C.; and petitioner's ability to assess L.C.'s quality of life and whether the conditions were satisfied. Tr. 91:11–24, 102:4–10. The Court finds it unnecessary to evaluate each of these conditions as the two conditions analyzed *infra* are sufficient to negate any contention that petitioner provided unconditional consent for L.C. to relocate permanently to the United States.

"farther from where we lived in Colombia" and had dissimilar weather. Tr. 108:5–20. In fact, respondent testified that petitioner was "unhappy" with her move to New York in part because it is "far from Colombia." Tr. 285:12–18.[12]

Petitioner also testified that the parties discussed Florida because respondent's cousins were located there and could care for L.C. Tr. 279:15–21. Furthermore, respondent's actions in mid-May 2024, including not returning L.C. to Colombia, as discussed *infra*, suggest that she may have known that her move to New York violated petitioner's condition—and therefore, she knew that this condition existed.

### b.    Trip to Colombia

As to the second condition, petitioner's travel authorization is sufficient. *See Swett*, 733 F. Supp. 3d at 277 (finding "notarized travel authorization" with return date "unambiguous[]" as to petitioner's permission for child's removal "only until that date"). Pursuant to petitioner's rights under Colombian law, once L.C. became a Colombian citizen in January 2024, respondent could not travel abroad with L.C. unless she obtained written permission from petitioner. PX2, *see also* Tr. 219:6–7. Petitioner admits that he registered L.C. as a Colombian citizen without respondent's consent, as he believes it was his right to do. Tr. 129:10–13, 159:11–17. Respondent was upset by petitioner's actions and argues this is part of a broader pattern of petitioner's bad faith as to L.C.'s relocation. *See* Tr. 360:1–14; *see also* Tr. 287:8–19.

---

[12]    Respondent also testified that petitioner was unhappy because he "didn't want to pay New York child support." Tr. 285:16–18. However, that is not supported elsewhere in the record.

28

That petitioner registered L.C. as a Colombian citizen without respondent's consent may indicate distrust between the parties, but that alone does not demonstrate that the subsequent travel authorization was invalid. Indeed, by respondent's account, petitioner took this step so that he could require respondent to obtain his permission to leave Colombia with L.C. Tr. 219:6–16. Petitioner did so to exercise control over L.C.'s residence and provided that permission via a written authorization, allowing L.C. to travel to the United States from January 26 to May 15, 2024, for purposes of "tourism." PX7; Tr. 100:18–101:3. This lends further support that petitioner did not give blanket permission for L.C.'s move and, to the contrary, that he wanted to ensure L.C.'s return to Colombia. Tr. 100:2–101:3, 156:7–9.

Further, whether petitioner's designation on the travel authorization that L.C.'s trip was for "tourism" accurately reflected petitioner's intent or represented a mere "formality" as respondent testified, Tr. 226:17–18, it is clear that the travel authorization does not indicate that he consented to respondent's retention of L.C. in the United States after May 16, 2024. *See Garcia Moreno v. Martin*, No. 08-cv-22432, 2008 WL 4716958, at *11 (S.D. Fla. Oct. 23, 2008) (finding travel authorization that included "nothing" about the child "permanently moving or relocating" did not indicate petitioner consented to permanent removal to the U.S.). The parties dispute the purpose of L.C.'s May 2024 trip to Colombia. Petitioner testified that the purpose of the trip was to "evaluate L.C.'s adaptability in the U.S.," Tr. 102:1–10, and to go on vacation, Tr. 150:19; respondent testified the trip was solely for vacation, Tr. 242:14–25. *See also* RXTT 46 (petitioner referencing a "vacation to Colombia"); Tr. 285:19–21 (respondent testifying that the May 2024 trip to Colombia was for "vacation"), 295:20–21 (respondent testifying that the

29

parties discussed L.C. was "going to go to Colombia for visitation"). While the Court finds

some inconsistency between petitioner's testimony as to the temporary nature of L.C.'s

move to the United States and his later message that the parties had agreed to a "vacation"

in Colombia, these explanations are not mutually exclusive. *See* RXTT; Tr. 150:15–151:18

(petitioner testifying that "[w]e talked about a three-week vacation, but it wasn't exactly

that"). In either scenario, the condition was that L.C. would travel to Colombia. *See* Tr.

285:19–25 (petitioner purchased airplane tickets for L.C. and respondent to fly to

Colombia on May 16, 2024, with respondent's knowledge); PX9.

In addition to the travel authorization, the parties' co-parenting counselor, Gomez,

testified that a condition of the move to the United States was that L.C. would travel to

Colombia to "see" petitioner. Tr. 22:6–22. Indeed, after respondent informed petitioner

that L.C. was not returning to Colombia as scheduled, petitioner immediately reached out

to Gomez for an emergency session. Tr. 105:21–23. This action demonstrates both that

petitioner discussed this condition during the parties' prior sessions with Gomez and that

L.C.'s trip to Colombia was a material condition on petitioner's consent. Petitioner's swift

and strong reaction suggests that there was no doubt as to his intentions that L.C. was

required to travel to Colombia in May 2024.

### 2. Fulfillment of Petitioner's Conditions

Respondent did not fulfill those conditions. Instead, on May 4, respondent traveled

with L.C. to New York and just two days later told petitioner that she planned to stay there

with L.C., in violation of the first condition that L.C. reside in Florida. Tr. 105:2–4,

278:10–279:6. The testimony from respondent, her mother, and Gomez that petitioner

was aware of the possibility that she may move to New York or Georgia does not support

a finding of consent to those locations. *See* Tr. 52:5–8, 276:14–25, 334:8–335:5. And even if respondent did not agree to petitioner's geographical condition, what is important under the Convention is petitioner's "subjective intent" in allowing L.C. to travel to the United States. *See In re Kim*, 404 F. Supp. at 516.

Further, respondent testified that she refused to disclose her New York address to petitioner and to bring L.C. to Colombia because she feared that petitioner would take L.C. to Colombia without her permission or decline to provide further written authorization for L.C. to return to the United States. Tr. 104:12–14, 109:12–25, 110:1–5, 248:20–24. This fear was based on petitioner's registration of L.C. as a Colombian citizen in January 2024, thus requiring a travel authorization from the non-traveling parent. However, given this occurred in January, that fear would have been present when petitioner visited L.C. on two occasions in Florida in March and April 2024, keeping L.C. with him for multiple nights before returning him to respondent. That fear would have also been present when petitioner bought return tickets for L.C. and respondent to Colombia, also in April 2024. However, respondent did not express any concern with petitioner's unsupervised visits with L.C. in Florida or with L.C.'s return to Colombia until May, when she moved with L.C. to New York. Respondent provided no explanation for what occurred that caused her sudden change in concern. And from the record, the only change that is evident was respondent's move to New York and petitioner's immediate expression that he was upset with this move and respondent's "unilateral decisions." Tr. 279:7–14, 297:23–25. This suggests that respondent knew petitioner's consent was no longer valid when she and L.C. moved to New York. Indeed, respondent's actions after she moved to New York and refusal to bring L.C. back to Colombia suggest that she was

aware that petitioner's consent had been vitiated: by her own account, there was "nothing [] preventing him" from taking L.C. without her permission. Tr. 252:4–9. *See also Gonzalez-Caballero*, 251 F.3d at 794.

Respondent's remaining evidence fails to establish petitioner's consent to L.C.'s indefinite and permanent relocation by a preponderance of the evidence. Respondent points to text messages in which she indicates to petitioner that the move is a "new beginning" for her and L.C., RXW, and another text message where petitioner states that "children belong to the mother," RXN. However, these text messages do not demonstrate unconditional consent for L.C.'s move—at most, they demonstrate that the parties might have agreed to a more permanent move for L.C. in the future. Last, the testimonies of Dr. Cadena and respondent's mother, Ana Escobar del Carmen Restrepo, similarly do not establish that petitioner ever consented to L.C.'s permanent relocation to the United States, though they demonstrate *respondent*'s intent for a permanent move.

*     *     *

Accordingly, respondent has failed to establish that petitioner consented to a permanent retention of L.C. in the United States or that the conditions of petitioner's limited consent were satisfied such that the Convention does not require return of L.C. to Colombia.

The Court notes that respondent also lodges allegations of bad faith against petitioner, portraying this action as a mechanism "to force Ms. Escobar to move back to Colombia so she can mother the child." Tr. 361:17–25. And that without respondent, there will be no one to care for L.C. in Colombia. Tr. 361:2–4. To be sure, the parties find themselves in need of the judicial process to resolve a deeply personal and difficult

32

decision about where and under what conditions their child will live. That is an understandably difficult position for all. But, based on this record, the Court perceives no bad faith by either party. Nor does the Convention task the Court with resolving this custody dispute based on the best interests of the child—those are arguments and questions for another court. *See Monasky*, 589 U.S. at 82; *Jacquety v. Baptista*, 538 F. Supp. 3d 325, 332 (S.D.N.Y. 2021).

## CONCLUSION

For the reasons stated above, the petition is **GRANTED** and the child is ordered returned to Colombia. Respondent's counterclaim for attorneys' fees and costs is **DENIED**. Each party shall bear its own costs. The Court respectfully directs the Clerk of Court enter judgment in favor of petitioner. The parties shall submit a joint proposed order of return by April 4, 2025.

**SO ORDERED.**

_/s/ Natasha C. Merle_____
NATASHA C. MERLE
United States District Judge

Dated:        March 28, 2025
              Brooklyn, New York

33

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SEBASTIAN CORREA MORALES,

                                                                    JUDGMENT

                                 Petitioner,

          -against-

JULIANA ESCOBAR RESTREPO,                              24-CV-7951 (NCM) (TAM)

                                 Respondent.
--------------------------------------------------------X

     A Findings of Fact and Conclusions of Law of the Honorable Natasha C. Merle, United

States District Judge, having been filed on March 28, 2025, granting the petition brought under the

Hague Convention on the Civil Aspects of International Child Abduction and ordering the return of

the child to Colombia; and denying Respondent's counterclaim for attorneys' fees, it is

     ORDERED and ADJUDGED that judgment is hereby entered in favor of Petitioner, and

the child is ordered returned to Colombia; and that Respondent's motion for attorneys' fees is

denied.

Dated: Brooklyn, New York                              Brenna B. Mahoney
     March 31, 2025                                        Clerk of Court

                                                 by:      /s/ Alicia Guy
                                                          Deputy Clerk

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SEBASTIAN CORREA MORALES, | ) | Hon. Natasha C. Merle |
| *Petitioner,* | ) | |
| | ) | Civ. No. 24-7951 |
| -against- | ) | |
| | ) | |
| JULIANA ESCOBAR RESTREPO, | ) | |
| *Respondent.* | ) | |

## **NOTICE OF APPEAL**

Notice is hereby given that Juliana Escobar Restrepo, Respondent in the above-captioned matter, hereby appeals to the United States Court of Appeals for the Second Circuit from the Order dated March 28, 2025 (ECF No. 62) granting Petitioner's Petition and ordering the return of the parties' child to Colombia pursuant to the Hague Convention.


Dated: New York, New York
April 4, 2025

/s/ Edgar Loy Fankbonner
Edgar Loy Fankbonner
GOLDBERGER & DUBIN, PC
401 Broadway, Suite 306
New York, New York 10013
Tel.: (212) 431-9380
Fax: (212) 966-0588
Cell: (917) 796-7406
fankbonner@gmail.com
*Attorneys for Respondent*