# 25-806

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

JULIANA ESCOBAR RESTREPO,

*Plaintiff-Appellant,*

V.

SEBASTIAN CORREA MORALES,

*Defendant-Appellee.*

---

On Appeal from the United States District Court for the Eastern District of New York
Case No. 1:24-cv-07951

Brief of Appellant Juliana Escobar

Juliana Escobar Restrepo, Pro Se
1207 154th Street
Whitestone, NY 11357
(718) 219-3356
Email: escobar.juliana@live.com

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant Juliana Escobar

Restrepo states that she is an individual, not a corporation. Accordingly, no

corporate disclosure is required.

# TABLE OF CONTENTS

Table of Contents……................................................... 2

Table of Authorities……................................................... 3

Statues…………………................................................... 5

Preliminary Statement ................................................... 6

Jurisdictional Statement ................................................... 7

Statement of the Issues Presented for Review ....................................................... 8

Statement of the Case ................................................... 9

Summary of the Argument ................................................... 13

Standard of Review ................................................... 14

Argument ...................................................................................... 15

    I. The District Court Erred in Finding That L.C.'s Habitual Residence Was Colombia at the Time of Retention .......................................... 15

    II. The District Court Erred in Finding That Appellant Failed to Establish the Consent Defense Under Article 13 of the Hague Convention ................. 19

Conclusion ..................................................................................... 23

Certificate of Compliance ....................................................... 24

## TABLE OF AUTHORITIES

**Cases**

Baxter v. Baxter, 423 F.3d 363 (3d Cir. 2005)

Ermini v. Vittori, 758 F.3d 153 (2d Cir. 2014)

Gitter v. Gitter, 396 F.3d 124 (2d Cir. 2005)

Golan v. Saada, 596 U.S. 666 (2022)

In re Kim, 404 F. Supp. 2d 495 (S.D.N.Y. 2005)

Matter of E.Z., No. 1:21-cv-06524, 2021 WL 5106637 (S.D.N.Y. Nov. 2, 2021)

Monasky v. Taglieri, 589 U.S. 68 (2020)

Mota v. Castillo, 692 F.3d 108 (2d Cir. 2012)

Papakosmas v. Papakosmas, 483 F.3d 617 (9th Cir. 2007)

Pignoloni v. Gallagher, No. 12-cv-03305, 2012 WL 5904440 (E.D.N.Y. Nov. 25, 2012), aff'd, 555 F. App'x 112 (2d Cir. 2014)

Swett v. Bowe, 733 F. Supp. 3d 225 (S.D.N.Y. 2024), aff'd sub nom. Urquieta v. Bowe, 120 F.4th 335 (2d Cir. 2024)

Sundberg v. Bailey, 293 F. Supp. 3d 548 (W.D.N.C. 2017), aff'd, 765 F. App'x 910 (4th Cir. 2019)

Other Authorities

Civil Code of Colombia, Arts. 1495, 1530, 1531, 1539, 1618 (Julio Romanach, Jr., trans.) (2022)

Colombia Law 1098 of 2006, Childhood and Adolescence Code, Art. 110

Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, S. Treaty Doc. No. 99-11

Statutes

22 U.S.C. § 9003 ..............................................................................

28 U.S.C. § 1291 ...............................................................................

28 U.S.C. § 1331 ...............................................................................

**PRELIMINARY STATEMENT**

This appeal arises from the district court's grant of Appellee Sebastian Correa Morales's petition under the Hague Convention on the Civil Aspects of International Child Abduction, ordering the return of the parties' five-year-old child, L.C., to Colombia. The district court erred in finding that L.C.'s habitual residence was Colombia at the time of the alleged wrongful retention on May 16, 2024, and that Appellant Juliana Escobar Restrepo failed to establish that Appellee consented to L.C.'s permanent move to the United States. The court misapplied the totality-of-the-circumstances test for habitual residence by undervaluing evidence of the parties' shared intent for L.C. to relocate permanently to the United States and L.C. 's acclimatization there. Additionally, the court erroneously rejected Appellant's consent defense by failing to credit substantial evidence of Appellee's unconditional consent to L.C.'s permanent relocation. Appellant respectfully requests that this Court reverse the district court's decision, and order for L.C.'s return to the United States.

6

**JURISDICTIONAL STATEMENT**

The district court had subject-matter jurisdiction over this action pursuant to 28

U.S.C. § 1331, as the case arises under the Hague Convention on the Civil Aspects

of International Child Abduction and the International Child Abduction Remedies

Act, 22 U.S.C. §§ 9001 et seq. This Court has jurisdiction under 28 U.S.C. § 1291,

as the appeal is from a final judgment of the United States District Court for the

Eastern District of New York, entered on March 28, 2025 (ECF No. 62). Appellant

timely filed a notice of appeal on April 7, 2025, within 30 days of March 28, 2025,

pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A).

---

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

1. Did the district court err in finding that L.C. 's habitual residence was Colombia at the time of the alleged wrongful retention on May 16, 2024, despite evidence of the parties' shared intent such as the New Jersey divorced file by Mr. Correa to relocate L.C. permanently to the United States and L.C.'s acclimatization? Why did the divorce did not state that the child will reside in Florida if that was the alleged condition?

2. Did the district court err in concluding that Appellant failed to establish by a preponderance of the evidence that Appellee consented to L.C. 's permanent retention in the United States under Article 13 of the Hague Convention?

3. Evidence of Unconditional Consent: Appellee's actions—authorizing travel, buying return tickets only in April 2024, and not objecting to your one-way ticket purchase (Tr. 224:18–20)—suggest he consented to an indefinite U.S. stay. His voice message (RXN: "I'm not saying you can't take him") and response to your "new beginning" text (RXW: "I want the best for you") imply acceptance, not conditionality. The court's focus on the "tourism" label as limiting consent ignores appellants testimony that it was a formality (Tr. 307:1–18), a factual dispute it resolved against me without clear justification.

4. The court found two conditions (Florida residence, May 2024 Colombia trip) negated consent (p. 27–30), but these weren't formalized in writing or mutually agreed upon. My testimony (Tr. 282:3–283:4) and appellee's vague messages show discussions, not a contract under Colombian law (Civ. Code Col., Art. 1495).

5. The court credited my intent to stay in the U.S. (p. 20–21) but dismissed it as irrelevant without appellee's agreement. This contradicts *Monasky*'s focus on all circumstances, not just shared intent.

6. Joint Exercise Misapplied: Colombian law requires joint parental authority (Art. 288), yet petitioner unilaterally registered L.C. as a Colombian citizen (Tr. 129:10–13), undermining his claim of exercising rights collaboratively. The court glossed over this breach (p. 28–29), which my fear of abduction (Tr. 104:12–14) reinforced as a practical limit on his rights.

7. Travel Authorization Overreach: The court treated the authorization as evidence of exercised rights (p. 25), but its restrictive terms (tourism, May 15 deadline) were an attempt to control, not co-parent, conflicting with Art. 253's joint care mandate.

8. Best Interests Context: While not a custody determination, L.C.'s stability in the U.S. (school, family, Tr. 228:21–236:12) and my inability to work in Colombia (Tr. 208:18–209:4) weigh against uprooting him. The court's refusal to consider this (p. 33) ignored the Convention's child-protection aim.

9. Petitioner's Conduct: His unilateral citizenship registration (Tr. 219:6–16) and August 2024 Florida trip without consent (RXTT) suggest bad faith, which the court dismissed (p. 32). This merits discretion to keep L.C. in the U.S.The court also dismissed, if he did not acquiesce to his Stay in NY why did he visit LC in NY in June and August and did not file a Hague case until Nov 2024?

---

## STATEMENT OF THE CASE

Nature of the Case and Procedural History

This appeal arises from a petition filed by Appellee Sebastian Correa Morales under the Hague Convention and ICARA, seeking the return of the parties' child, L.C., to Colombia. The district court, per Judge Natasha C. Merle, granted the petition on March 28, 2025, finding that L.C. was wrongfully retained in the United States on May 16, 2024, and ordered his return to Colombia. (R. at 741–773).

Appellee filed the petition on November 15, 2024, along with a motion for expedited proceedings and a temporary restraining order (TRO). (R. at 750). The district court issued a TRO prohibiting Appellant from removing L.C. from New York and directed her to deposit L.C.'s passports with the Clerk of Court. (R. at 750). After a show cause hearing on November 26, 2024, and unsuccessful mediation, a two-day hearing was held on February 24 and 26, 2025. (R. at 750–751). The court granted the petition, finding that L.C. 's habitual residence was Colombia, Appellee's custody rights were breached, and Appellant failed to establish the consent defense. (R. at 759–773).

**Factual Background**

Appellant and Appellee, both dual citizens of the United States and Colombia, married in New York in 2015 and moved to Florida in 2019, where L.C. was born in January 2020. (R. at 742–743). In December 2021, the family relocated to Medellin, Colombia, living together until their separation around August 2022. (R. at 744). L.C., a US citizen,  lived with Appellant since birth, with Appellee exercising regular visitation. (R. at 744–745). L.C. attended daycare, preschool,

and extracurricular activities in Colombia and was enrolled in health insurance
there through November 2025. (R. at 744).

Appellant, unable to practice as a Physician Assistant in Colombia, became
unemployed in April 2022 and expressed her desire to return to the United States
for work. (R. at 744). In September 2023, she traveled to New York to explore job
opportunities. (R. at 744). In November 2023, Appellant decided to move to
Florida with L.C., informing Appellee, who expressed concerns about L.C.'s care
and living arrangements but did not explicitly object to a permanent move. (R. at
745–746; RXN). The parties engaged in co-parenting counseling with Elizabeth
Gomez to discuss the move, including potential locations, employment, daycare,
and child support. (R. at 746).

In January 2024, Appellee registered L.C. as a Colombian citizen without
Appellant's consent, requiring his authorization for L.C. to travel abroad now as a
Colombian citizen. (R. at 747). He provided written authorization for L.C. to travel
to the United States from January 26 to May 15, 2024, for "tourism." (R. at 747;
PX7), despite Appellant asking Appellee for the authorization to reflect the real
purpose of the trip was relocation and not tourism. On January 26, 2024, Appellant

11

and L.C. moved to Kissimmee, Florida, where L.C. attended preschool, studied

English, and engaged in social activities. (R. at 747–748). Appellee visited L.C. in

Florida in March and April 2024, and purchased tickets for L.C. and Appellant to

go to Colombia on May 16, 2024. (R. at 748). Appellee purchased one way tickets

to Colombia for May 2024 which was supposed to be for L.C. to have a 3 week

vacation, not to return to live, unclear who would be returning him to the United

States appellee did not purchase a flight from Colombia back to the United States.

On May 4, 2024, Appellant and L.C. relocated to New York to care for Appellant's

mother post-surgery. (R. at 748). On May 14, 2024, Appellant informed Appellee

that L.C. would not return to Colombia as scheduled, citing fears that Appellee

might prevent L.C.'s return to the United States. (R. at 748–749). Appellant

informed Appellee that L.C's May 2024 vacation to Colombia would be postponed

until custody was formalized in court as Appellee filed in New Jersey's Superior

Court a Divorced in February 2024 which Appellant needed to seek legal advice at

the time; Appellant received said divorce in April 2024. Appellant told Appellee to

continue to visit L.C. in New York, which he did in June and August 2024.

Appellee sought an emergency counseling session with a family therapist in May

2024 and later filed the petition. (R. at 749). Appellee filed this petition as a

retaliation and fulfilling his threats that he would do everything he needed to do to

cause problems if she did not follow through with the NJ divorce, and did not file a divorce in NY as he had told her to do in July 2024.

---

## SUMMARY OF THE ARGUMENT

The district court erred in finding that L.C. 's habitual residence was Colombia at the time of the alleged wrongful retention on May 16, 2024. The court failed to properly weigh evidence of the parties' shared intent for L.C. to relocate permanently to the United States, as demonstrated by Appellee's statements and actions such as filing a divorce in New Jersey that states that the mother will have physical custody of the child in New York, and L.C.'s acclimatization in Florida. The court also erred in rejecting Appellant's consent defense under Article 13 of the Hague Convention, disregarding evidence that Appellee consented to L.C. 's permanent relocation, including his acknowledgment that "children belong to the mother" and his failure to object to the move during extensive discussions. These errors warrant reversal of the district court's order to return L.C. to Colombia. Or in its defect a new trial for Appellant to have the opportunity to show evidence that the Hague petition was filed as a retaliation due to Appellant declining to sign a

fraudulent New Jersey divorce and also refusing to file a divorce in New York; In July 2024 Appellee asked Appellant to file a divorce petition in New York despite her not having the legal residence time required to file a divorce because he was in need to "move on" with his life as he had a new partner.

---

## STANDARD OF REVIEW

This Court reviews the district court's factual findings for clear error and its legal conclusions, including the determination of habitual residence and the application of the consent defense, de novo. Golan v. Saada, 596 U.S. 666, 671 (2022); Gitter v. Gitter, 396 F.3d 124, 130 (2d Cir. 2005). Under clear error review, a finding is reversed only if the reviewing court is left with a "definite and firm conviction that a mistake has been committed." Id. at 131.

---

**ARGUMENT**

I. The District Court Erred in Finding That L.C.'s Habitual Residence Was Colombia at the Time of Retention

The district court erred in concluding that L.C.'s habitual residence was Colombia on May 16, 2024, by misapplying the totality-of-the-circumstances test under Monasky v. Taglieri, 589 U.S. 68 (2020). The court undervalued evidence of the parties' shared intent to relocate L.C. permanently to the United States and L.C.'s acclimatization in Florida, leading to an erroneous determination that Colombia remained L.C.'s habitual residence. Additionally Appellee wrongfully claimed initially on his petition this was a child abduction case then said it was a wrongful retention on May 16, 2024 and therefore evidence to show L.C. was acclimatized in the United States past May 2024 was not allowed to be presented during the trial. Appellant's counsel in EDNY failed to provide crucial evidence that shows that L.C.'s relocation was not conditioned to only Florida; also the NJ divorce contradicts this condition, divorce that was filed in February 2024. Furthermore appellant's counsel failed to impeach Appellee during the trial as indicated on the record Tr. 254:4–20.

15

A. The Parties' Shared Intent Supported a Change in Habitual Residence

The Hague Convention does not require an "actual agreement" for a child's habitual residence to change, but the parents' "shared, settled intent" is a key factor. Monasky, 589 U.S. at 76; Ermini v. Vittori, 758 F.3d 153, 159 (2d Cir. 2014). The district court acknowledged that Appellant intended to relocate permanently to the United States (R. at 760–761) but erred in finding no shared intent with Appellee. Evidence demonstrates that Appellee acquiesced to L.C.'s permanent relocation:

- Appellee's Statements: In November 2023, Appellee stated, "I'm not saying you can't take him, even though I don't want you to, because I know you're a good mother and that the children belong to the mother." (RXN; R. at 746). This reflects acceptance of L.C.'s relocation with Appellant, undermining the court's finding of conditional intent.
- Extensive Discussions: The parties engaged in 27 co-parenting counseling sessions with Elizabeth Gomez, discussing L.C.'s relocation, including employment, daycare, and child support. (R. at 746). Appellee's active participation and visitations in June and August of 2024 without explicit objection suggests agreement to the move. See Gitter, 396 F.3d at 134 (parents' actions inform intent).
- New Jersey Divorce Complaint: Appellee filed a divorce complaint in February 2024, listing Appellant's residence as New York and proposing that she retain full physical custody of L.C. (RXA; R. at 745). This indicates Appellee's acknowledgment of L.C. 's residence in the United States,

contradicting the court's finding of no shared intent and the condition to only Florida. (R. at 763).

The district court's reliance on Appellee's testimony about "conditions" (e.g., L.C. living in Florida) was clearly erroneous as there was factual evidence such as the NJ divorce that there were no conditions, as these were not formalized agreements but mere preferences discussed during counseling. (R. at 762). Appellant testified that no "actual agreement" existed, only discussions, and the only consensus was on child support. (R. at 762). The absence of a formal agreement does not negate shared intent, as Monasky permits habitual residence to be established without such. 589 U.S. at 76. The court's focus on Appellee's subjective intent overlooked Appellant's actions, such as selling her car and purchasing one-way tickets to Florida, which Appellee did not contest. (R. at 747).


B. L.C.'s Acclimatization Supported a Change in Habitual Residence


For a young child like L.C., acclimatization is relevant to habitual residence, particularly in retention cases. Monasky, 589 U.S. at 78 n.3. The district court erred in finding that L.C. was not acclimatized to the United States by May 16, 2024. L.C., aged five, lived in Florida from January 26 to May 4, 2024, attending

preschool, studying English, and forming social connections with family and peers. (R. at 747–748). These activities reflect "meaningful connections" to the United States. Id. The court's finding that L.C. 's two-week stay in New York lacked acclimatization (R. at 764) improperly segmented the analysis, ignoring his prior four months in Florida, a stable environment akin to his life in Colombia. See Pignoloni v. Gallagher, 2012 WL 5904440, at *40 (E.D.N.Y. Nov. 25, 2012) (considering duration and stability of child's residence).

The court also erred in deeming L.C. too young to form attachments, citing Sundberg v. Bailey, 293 F. Supp. 3d 548 (W.D.N.C. 2017). (R. at 765). Unlike Sundberg, where the child had minimal connections, L.C. engaged in structured activities and maintained family ties in Florida. (R. at 747–748). The court's reliance on L.C. 's health insurance in Colombia and family ties there (R. at 764) does not outweigh his integration into U.S. life, especially given his dual citizenship and prior residence in the United States. (R. at 744). The court's comparison to Papakosmas v. Papakosmas, 483 F.3d 617 (9th Cir. 2007), is inapt, as L.C. 's life was not in "flux" but stable in Florida before the brief move to New York. (R. at 764).

The district court's failure to holistically assess the parties' shared intent and L.C. 's acclimatization constitutes reversible error, as the evidence supports a finding that L.C. 's habitual residence was the United States by May 16, 2024. See Gitter, 396 F.3d at 131–33; Mota v. Castillo, 692 F.3d 108, 115 (2d Cir. 2012).

---

## II. The District Court Erred in Finding That Appellant Failed to Establish the Consent Defense Under Article 13 of the Hague Convention

Even if L.C. 's habitual residence was Colombia, the district court erred in rejecting Appellant's consent defense under Article 13 of the Hague Convention. The defense applies if Appellee consented to L.C.'s retention in the United States for an "indefinite or permanent time period." In re Kim, 404 F. Supp. 2d 495, 516 (S.D.N.Y. 2005); 22 U.S.C. § 9003(e)(2)(B). The court's finding that Appellee's consent was conditional and unfulfilled (R. at 766–772) was clearly erroneous, as substantial evidence demonstrates unconditional consent.

### A. Evidence of Appellee's Unconditional Consent

The district court failed to credit key evidence of Appellee's consent to L.C.'s

permanent relocation:

- Appellee's Statements: Appellee's November 2023 voice message stating, "children belong to the mother," and his lack of explicit objection to a permanent move (RXN; R. at 746) indicate consent. His response to Appellant's January 2024 text about a "new beginning" for L.C.—"I want the best for you. You will always be someone very important in my life"—further supports acquiescence. (RXW; R. at 747).

- Counseling Discussions: The parties' 27 sessions with Gomez covered L.C.'s relocation, with Appellee actively participating without prohibiting the move. (R. at 746). This contrasts with cases where consent was explicitly limited. See Baxter v. Baxter, 423 F.3d 363, 371–72 (3d Cir. 2005).

- New Jersey Divorce Complaint: The February 2024 complaint, proposing Appellant's full custody in the United States, undermines the court's finding of conditional consent. (RXA; R. at 745). The court's dismissal of this evidence as predating later discussions (R. at 763) ignores its relevance to Appellee's intent at the time of filing which was February 2024.

- Appellant's testimony that the parties' "understanding was that L.C. was going to live with [her] permanently in the United States" (R. at 766) was corroborated by Dr. Cadena and Appellant's mother, who testified that Appellee imposed no conditions. (R. at 766). The court's reliance on Appellee's subjective intent (R. at 771) improperly discounted this objective evidence. See Golan, 596 U.S. at 671.

- Article 13 provides an exception to return when the other parent has consented or acquiesced. The court required the consent to be unconditional and permanent — an unnecessarily rigid standard.

- Evidence, including text messages (RXN, RXW), the New Jersey custody filing, and Appellee's conduct (authorizing travel, delayed action), all support a finding of consent. The court gave undue weight to the "tourism" label and failed to consider testimony about the informal nature of those terms.

20

- The court credited self-serving and vague testimony by Appellee and dismissed my credible testimony, The court relied on testimony from a paid witness whose statements were inconsistent and unreliable.
- Further, the court treated the travel authorization (PX7) as cooperative co-parenting, when it was restrictive and unilaterally controlled by Appellee.
- L.C.'s well-being, including his life and education in Florida, and the absence of any risk to Appellee's custodial rights (given his U.S. citizenship and access to courts here), favored retention.
- Appellee delayed filing for return until November 2024, months after visiting L.C. in New York and Florida. His inconsistent positions — from abduction to wrongful retention — undermine the legitimacy of the petition.
- Appellee's fact witness Dr. Elizabeth Gomez admitted that she was being paid to testify which makes her testimony biased and an unreliable witness.

B. The District Court's Findings on Conditions Were Clearly Erroneous

The district court's finding that Appellee's consent was conditioned on L.C. living in Florida and traveling to Colombia in May 2024 (R. at 767–770) lacks support in the record. Under Colombian contract law, intent prevails over literal terms, and conditions fail if the contemplated event becomes impossible. Civil Code of Colombia, Arts. 1531, 1618 (R. at 757–758). The court's reliance on the travel authorization's "tourism" designation (PX7; R. at 769) was misplaced, as Appellant testified it was a formality, not reflective of intent, also she did not have any input on said travel authorization. (R. at 766). Appellee's purchase of return tickets (PX9; R. at 748) aligned with discussions of a vacation, not a permanent return. (R. at 770).

21

The court's emphasis on the Florida condition ignores Appellant's text to Appellee in February 2024, stating she chose Florida "for L.C. to live better and to be closer to Colombia," which Appellee did not contest. (R. at 767). Unforeseen family needs prompted the move to New York (Appellant's mother's surgery) and need to seek counsel for the New Jersey divorce petition, and Appellee's subsequent objection (R. at 748) does not negate prior consent. See Swett v. Bowe, 733 F. Supp. 3d 225, 277 (S.D.N.Y. 2024). Appellant's fear that Appellee might prevent L.C.'s return to the United States (R. at 771) was reasonable, given Appellee's unilateral registration of L.C. as a Colombian citizen and previous threats that he could travel to the United States and take him. (R. at 747). The district court's conclusion that Appellant's actions after moving to New York showed awareness of violating conditions (R. at 771–772) is speculative. Appellant's nondisclosure of her address stemmed from legitimate concerns about Appellee's intentions and previous threats, not an admission of wrongful retention. Appellee was aware of L.C's enrollment in school in New York in June 2024 and also did not object (R. at 748–749). The court failed to consider that Appellee's conduct, including unsupervised visits in Florida and New York (in June and August 2024) after the alleged retention in May 2024, supported his consent to L.C. 's relocation. See In re

Kim, 404 F. Supp. 2d at 516.

---

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Court reverse the district court's judgment granting Appellee's petition and ordering L.C.'s return to Colombia. Alternatively, Appellant requests a remand for further findings and evidence on L.C.'s habitual residence and Appellee's consent. Appellant's counsel in EDNY did not submit crucial evidence, failed to provide the full story and limited responses and submissions in EDNY to only accepting, denying or partially accepting Appellee's claims, not giving the trial judge a thorough contextualization of the events and facts. And also the Appellants counsel failed to impeach Mr. Correa.

Respectfully submitted,

/s/ Juliana Escobar Restrepo

October 20, 2025

---

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Second Circuit Local Rule 32.1(a)(4) because it contains 4411 words.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14-point Times New Roman.

/s/ Juliana Escobar Restrepo

October 20, 2025

---